## WILLIAM J. GALLAGHER *et al.*

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 23, 1904—Rehearing denied October 13, 1904.*

1. CRIMINAL LAW—*one good count in indictment is sufficient to sustain conviction.* One good count in an indictment is sufficient to sustain a judgment of conviction even though the other counts are faulty.

2. SAME—*power to carry out conspiracy is not essential to the conspiracy itself.* It is not essential to the sufficiency of an indictment for conspiracy to cause certain persons to be summoned as jurymen for the purpose of obtaining a certain verdict, that it be alleged that some one of the conspirators had the power to summon the jurymen or cause them to be summoned.

3. SAME—*indictment for conspiracy to procure false verdict need not aver jurisdiction.* An indictment alleging conspiracy to procure a false verdict in a cause pending before a certain justice of the peace charges a conspiracy to defeat justice in a public court, and it is not necessary to aver that the justice of the peace had jurisdiction of the cause.

4. SAME—*when bill of particulars is unnecessary.* A bill of particulars in a criminal case is not necessary where the indictment itself sufficiently informs the defendants of the crime with which they are charged to enable them to prepare their defense.

5. SAME—*allegation of time may be considered as indicating different crimes.* In determining whether two indictments for conspiracy are for distinct offenses, the allegation of the time when the offense was committed and the fact that the co-conspirators are not the same in the two indictments may be considered.

6. SAME—*evidence that witness was pardoned after conviction is immaterial.* Conviction of a witness of a crime may be shown as affecting his credibility, but evidence that he was subsequently pardoned is immaterial and is properly denied admission.

7. SAME—*when remarks of court and counsel will not reverse.* A judgment of conviction will not be reversed for alleged improper remarks of the court and of counsel for the prosecution, unless the court of review can see that the remarks were unprovoked, or so foreign to the case as to be calculated to produce a result which otherwise would not have been reached.

8. SAME—*when defendants are presumed to be in court.* If the record shows that defendants in a criminal case were present in court on a certain day, it will be presumed, nothing in the record showing the contrary, that they were present during all the proceedings had on that day, and the contrary cannot be shown by affidavits.

9. SAME—*defendants cannot avail of voluntary absence.* Defendants in a criminal case who voluntarily absent themselves from the court room during particular proceedings cannot take advantage of such absence as rendering the proceedings irregular.

SCOTT, J., dissenting.

*O'Donnell* v. *People*, 110 Ill. App. 250, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

At the April term, 1902, of the criminal court of Cook county, the two plaintiffs in error, William J. Gallagher and John O'Donnell, were indicted, with five others, for the crime of conspiracy to do a certain illegal act injurious to the administration of public justice. The indictment contained five counts. The first count alleged that the two plaintiffs in error, together with P. H. O'Donnell, James T. Brady, Hammond T. Lawrence, Herbert Ruthens and Cyrus Simon, conspired, with three others named in the indictment but not indicted, to procure a verdict to be given for the defendant, the Chicago Union Traction Company, in a certain cause then pending before a justice of the peace in Chicago, by getting four of the conspirators (naming them) to be sworn as jurors on the trial of said cause, and in pursuance of said conspiracy the four named conspirators were sworn on said jury, and did, with the other jurors, give a verdict for the defendant. The second count alleges a conspiracy by and between the same parties to do a certain illegal act injurious to the administration of public justice, to-wit, to cause to be summoned and sworn as jurors to try the issues in a certain cause in which the city of Chicago was plaintiff and the Chicago Union Traction Company, a corporation, was defendant, then pending for trial in a court of a justice of the peace, four of said conspirators (naming them) for the unlawful purpose of procuring a verdict on behalf of the defendant in said cause regard-

less of the evidence that might be produced in court at the trial thereof. The third count is substantially the same as the second, except as to the formal conclusion. The fourth count charges a conspiracy between the same parties, to-wit, to cause to have five of said conspirators (naming them) and two others (naming them) summoned to serve as jurors in said cause then pending before a justice of the peace for the unlawful purpose of having said persons who might be so summoned, sworn as jurors to try said cause and render a verdict for the defendant regardless of the evidence that might be produced at the trial of such cause. The fifth count is the same as the fourth, except as to the formal conclusion.

Two hundred suits had been instituted, before this indictment was rendered, before Justice Gibbons, a justice of the peace in and for the town of North Chicago, by the city of Chicago against the Chicago Union Traction Company, to enforce obedience to a city ordinance requiring the giving of transfer slips on certain street railway lines and imposing a fine for a failure to give the same. On April 4 a change of venue was taken to Justice George H. Woods and a continuance granted to April 14. At the time the continuance was granted the defendant announced that a jury would be called in each case. April 14 one of the cases was tried before Justice Woods with a jury. Some time prior to the institution of the two hundred suits, eleven other cases involving substantially the same questions,—*i. e.*, the validity of the ordinance,—were tried in the criminal court of Cook county and a decision rendered holding the ordinance in question valid, from which decision an appeal had been prayed. It is claimed on behalf of the People that it was the plan of the traction company to delay the two hundred suits until the question as to the validity of the ordinance had been determined by the Supreme Court, and hence to delay the trial of those cases as long as possible. P. H. O'Donnell and James T. Brady conducted

a law business in partnership in the city of Chicago as O'Donnell & Brady, and they had been retained by the defendant, the Chicago Union Traction Company, to defend the suits against it. William J. Gallagher, one of the plaintiffs in error, had for some time officed with O'Donnell & Brady, and it is claimed that he arranged with some three or four parties named in the indictment to be present at a specified time and place so that they might be summoned as jurors in said suits, and that he arranged with such parties to wear a pin stuck in a certain way in the lapels of their coats, so that they might be known to the constable who was to summon jurors, and in pursuance of such arrangement the persons so arranged with were summoned by the constable, accepted, and served on the jury and rendered a verdict for the defendant company. It is also claimed that the said John O'Donnell was a party to the plan between Gallagher and the constable to select jurors who were favorable to the defendant. After the return of the indictment a trial was had, upon which the jury found all of the defendants guilty. The verdict was several in form, different punishments being fixed against the different defendants. Gallagher was sentenced to the penitentiary and the other defendants fined in different amounts. Separate motions for a new trial and in arrest of judgment were duly made and overruled. The judgment followed the verdict, imposing separate penalties on each defendant. The case was taken to the Appellate Court for the First District by writ of error. That court reversed the judgment as to P. H. O'Donnell and James T. Brady and affirmed it as to William J. Gallagher and John O'Donnell. Of the seven convicted, two paid their fines in the criminal court. One paid his fine in the Appellate Court and asked to have the writ of error dismissed as to him. Gallagher and O'Donnell have sued out this writ of error to the Appellate Court seeking a reversal of the judgment of affirmance against them.

STEDMAN & SOELKE, for plaintiff in error Gallagher.

WILLIAM DILLON, for plaintiff in error O'Donnell.

H. J. HAMLIN, Attorney General, and CHARLES S. DE-NEEN, State's Attorney, (ALBERT C. BARNES, of counsel,) for the People.

Mr. JUSTICE WILKIN delivered the opinion of the court:

There are many grounds of reversal assigned by the plaintiffs in error,—so many, in fact, that it will be impossible within the limits of an opinion to even notice all of them; but we will consider such of them as we consider of sufficient importance, in the order in which they are presented in the brief and argument of counsel for plaintiffs in error.

A motion was made to quash the indictment, which the court overruled, and that ruling is assigned as error. Several reasons are urged for holding the indictment defective, the first being, that the allegations contained therein are too uncertain to apprise the defendants of the exact nature of the offense charged against them; that the averments are not such that the offense may be identified so as to meet the requirements of the constitution which secure to the accused such specific designation of the offense laid to his charge as will enable him to make every preparation for his trial necessary to his full and complete defense; also that the allegations are not sufficient for the court to determine, from an inspection of the indictment itself, that the offense created by the statute has been, in fact, committed. The various counts allege that the defendants unlawfully, fraudulently, maliciously, wrongfully and wickedly conspired, combined, confederated and agreed, together with certain parties therein named, by promise, request and other ways and means, to unlawfully procure a verdict for the defendant in said cause, to enable the defendants to be sworn in said cause as jurors, in order that they might

render a verdict for the defendant. We think these allegations in the several counts of the indictment are sufficient, both to inform the defendants as to the crime with which they are charged, and to enable the court to ascertain, from an inspection of the same, that the offense created by the statute (Starr & Cur. Stat. chap. 38, par. 96, p. 1250,) had been violated. Defendants could in no way have been misled as to the particular crime with which they were charged. Therefore the indictment was good.

It is next claimed that the first count of the indictment fails to aver that the cause or suit described therein was pending at the time the alleged conspiracy is said to have been entered into, and for that reason the count was fatally defective. That count alleges "that in a certain suit pending before a justice of the peace of the city of Chicago between the city of Chicago and the Chicago Union Traction Company, the defendants did, on the 14th day of April, 1902, unlawfully," etc. The regular course of procedure would be presumed, requiring service of the defendant company before April 14, and hence it must necessarily follow that the case must have been pending on the day upon which the conspiracy was alleged to have been entered into. It therefore alleged with sufficient certainty the pendency of the suit. But even if that count was bad, the others contain the allegation of the pendency of this suit, and it is a well settled rule that a conviction on a general verdict will be sustained, even though some of the counts are faulty, if there be one good count in the indictment. *Hiner* v. *People*, 34 Ill. 297; *Ochs* v. *People*, 124 id. 399.

It is next insisted that there is no averment in any count of the indictment from which it appears that any of the parties named in the indictment had the capacity to carry into execution the alleged purpose of the conspiracy charged, namely, "to summon, or cause to be summoned, certain persons as jurors to try said cause." The actual summoning of the jurors was not necessary,

under this indictment, to constitute the crime. Even though the jurors were not, in fact, summoned, if they had been approached by the parties as charged in the indictment, the offense would have been complete. The constable is not a necessary party to such a conspiracy. The jurors might have been summoned by a constable innocently, after they had been corrupted by the defendants. The conspiracy was complete when the combination was formed, and the impossibility of carrying out its object would not prevent the formation of the conspiracy itself. In the case of *Ochs* v. *People, supra,* we said in reference to the crime of conspiracy (p. 423): "It was not essential to the crime charged, that there should have been the obtaining of money by false pretenses or that there should have been false pretenses used. It would be enough if there was a conspiracy to obtain money by false pretenses. There might have been the conspiracy, and yet it not be carried out." So in this case, the crime was the conspiracy, and the fact that it is not alleged in the indictment that the constable had power to summon a jury is immaterial.

The next defect alleged is, that there is no averment in the indictment, or in any of its counts, that Justice Woods had jurisdiction over the parties or subject matter of the alleged suit, or that said cause was tried by him in the town of North Chicago. As a general proposition, jurisdiction of a justice of the peace will not be presumed in a case where it is necessary to be shown that such jurisdiction depends upon the statute, and his right to hear and adjudicate on any question must be exercised in the town for which he is elected. In any case where either of these questions is a direct issue an averment of jurisdiction is necessary. But in the case at bar the offense was against the administration of public justice, to procure a false verdict in a justice court. The gist of the offense was the attempt to procure certain persons, as jurors, to decide a certain case in a certain court in

a certain way, regardless of the evidence. The offense was the confederation to do an unlawful act, namely, to defeat justice in a public court. The only thing necessary to allege in the indictment was the existence of a court and a cause and such design with reference thereto, so that the court, upon inspection of the indictment, could see that a conspiracy to carry out these designs constitutes an offense against public justice. In Hawkins' Pleas of the Crown (vol. 1, sec. 3, p. 447, Curwood's ed.) the author says: "Neither doth it seem to be any justification for a conspiracy to carry on a false and malicious prosecution * * * that the court wherein the prosecution was carried on or designed to be carried on had no jurisdiction of the cause, or that the matter of the indictment did import no matter of scandal, so that the party aggrieved was in truth in no danger of losing either his life, liberty or reputation, for, notwithstanding the injury intended to the party against whom such a confederacy is formed may perhaps be inconsiderable, yet the association to pervert the law in order to procure it seems to be a crime of a very high nature and justly to deserve the resentment of the law." So the court mentioned in the indictment was a court of justice, and although it may have been without jurisdiction of the action, if the intent and designs were not against the case but against the court, the crime did not depend upon the jurisdiction of the court. It was therefore only necessary to allege that the case was pending before the justice, and aver the attempt to defeat the administration of justice in Cook county, in order to make the allegation sufficient.

This indictment was under section 46 of the Criminal Code, which provides: "If any two or more persons conspire or agree together * * * to do any illegal act injurious to the public trade, health, morals, police or administration of public justice, * * * they shall be deemed guilty of a conspiracy." Under section 408, division 11, of the Criminal Code, (Hurd's Stat. 1901, p. 656,)

and under many decisions of this court, it has been held that an indictment shall be deemed sufficient which states the offense in the terms and language of the statute creating it, provided such statute sufficiently defines the nature of the offense to be charged, and it is only when the statute itself does not define the nature of the offense sufficiently to notify the defendants of the crime with which they are charged, that the allegation in the words of the statute will be held insufficient. Taking this indictment and its various counts as a whole, we are of the opinion that the defendants were sufficiently informed as to the nature of the offense with which they were charged, and the court committed no error in overruling the motion to quash.

After the motion to quash the indictment was overruled, the defendants made a motion for a specific bill of particulars, which motion was denied, and this is urged as reversible error. We think the indictment in itself sufficiently informed the defendants of the crime with which they were charged, and there can be no serious contention that they were in any way prejudiced by not knowing the particular facts upon which the State depended for a conviction. It is only where it is made to appear that the defendant cannot properly prepare his defense without a bill of particulars, that the court will require the prosecuting attorney to furnish it. (*Kelly* v. *People*, 192 Ill. 119.) Whether the State shall be ruled to furnish a bill of particulars in a specific case is a matter resting within the sound discretion of the court. (*DuBois* v. *People*, 200 Ill. 157.) Such discretion was not abused in this case, and it was not error to overrule the motion.

It is next insisted that the defendant Gallagher had already been once in jeopardy for this crime. This contention is predicated upon a motion to set aside the verdict made after the court overruled the motion for a new trial, in support of which was presented a certified copy of the proceeding upon another indictment against the

defendant Gallagher and others, which showed a plea of guilty by Gallagher and the imposition and payment of a fine by way of punishment. The proceedings shown in said certificate took place after the rendition of the verdict in the case at bar, namely, on July 7, 1902, while a motion for a new trial was pending. After the latter motion had been denied on August 9, a motion to vacate the judgment for the reason stated was presented September 15, 1902. We do not think the two indictments, or the evidence taken thereunder, constituted one and the same offense, or that the defendant Gallagher was twice in jeopardy for the crime of which he was convicted upon the trial below. The indictment in this case charges a conspiracy between seven persons, with four others named therein, to do an unlawful act therein described. The other indictment under which it is claimed Gallagher was formerly in jeopardy charged a conspiracy with different persons to do an act similar to the crime charged in this case, which conspiracy is alleged to have been entered into on the 21st day of April, 1902, whereas the time alleged in the indictment upon which the conviction was had in this case was April 14 of that year. It is true that the allegation of time is not material, yet it is proper to be considered as indicating that the two indictments for conspiracy are for separate and distinct offenses. Only three of the ten persons charged with the crime in the two indictments are the same, the other seven defendants being different persons. No error was committed by the court in holding that the defendant Gallagher had not been twice in jeopardy for this offense.

Objection is also made to the ruling of the trial court upon the admission and exclusion of evidence. The evidence showed that on the 14th day of April, 1902, the defendant Lawrence was at the Revere House when the jurors were summoned by the constable. Stephen Crowe, the proprietor of the Revere House, was called as a witness for the defendant Lawrence, and was asked whether,

at the interview between him and the defendant Lawrence at the Revere House in the first week of April, 1902, anything was said in relation to the renewal of an advertisement by him, which was solicited by Lawrence. Objection to the question was sustained. Counsel offered to prove that Lawrence's visit to the Revere House on the morning in question was for the purpose of soliciting advertisements. The exclusion of this evidence is urged as error. The evidence was incompetent for several reasons. In the first place, it was a conversation between the defendant himself and a third party. In the next place, it was irrelevant. It would not have proved, nor did it tend to prove, that the defendant Lawrence might not have been there on the morning in question for the purpose of aiding in the alleged conspiracy. That he may have been there for some other purpose is not inconsistent with his also being there for the purpose charged. But aside from this, the exclusion of the evidence is not shown to have had any prejudicial effect upon plaintiffs in error even if it had been otherwise competent.

At the time the judge sustained the objection to the offered testimony he stated "that would not explain it," and that remark of the court, it is insisted, was prejudicial error. The statement by the court was true, and we see no reason why it might not be given as a reason for the ruling. As before stated, it is not apparent how it could have injuriously affected either Gallagher or O'Donnell, plaintiffs in error.

On the examination of Gallagher, the record of his conviction for the crime of forgery was offered in evidence, and his counsel thereupon offered to show that he had been pardoned, but the court excluded the evidence. That ruling was clearly right. Formerly, a person who had been convicted of any crime was incompetent to testify upon the trial of a criminal case, but that disability was removed by our statute, with the qualification that such conviction might be shown for the purpose of

affecting his credibility. (1 Starr & Cur. Stat. chap. 38, div. 13, sec. 6, p. 1397.) Under the statute, the guilt or innocence of the defendant of the crime for which he had been convicted, his punishment, his term of service, etc., are wholly immaterial and incompetent. That he may have been pardoned proves nothing as to his credibility, and to permit evidence of that fact would simply be to introduce into the case a collateral issue.

It is also insisted, with much earnestness, that the prosecuting attorney, during the progress of the trial, as well as the presiding judge, made remarks prejudicial to the defendants, and that for this reason the judgment of conviction should be reversed. Some of the remarks as set out in the brief and argument of their counsel, quoted as being made by the attorney for the People in his closing argument to the jury, considered alone, were improper. It is very difficult to lay down any flexible rule as to the proper limit of an argument upon the facts and circumstances of a case, and unless the court can see that statements are unprovoked or so foreign to the case as to be calculated to produce a result which otherwise would not have been reached, a judgment of conviction will not be reversed on that ground. The matter is one which must in every case be very largely entrusted to the discretion of the presiding judge. (*Siebert* v. *People*, 143 Ill. 571; *Spahn* v. *People*, 137 id. 538; *Schintz* v. *People*, 178 id. 320; *Schroeder* v. *People*, 196 id. 211; *Lake Erie and Western Railroad Co.* v. *Middleton*, 142 id. 550.) In the discussion of this subject, Thompson, in his work on Trials, at section 964 uses this language: "Recurring to what has already been said, and especially to the view that the control of argument, like other matters relating to the conduct of trials, must necessarily be committed largely to the discretion of the trial court, the conclusion follows that it is only in cases where the court has refused to exercise its powers, or where its discretion has been manifestly abused by permitting prejudicial

matters to be rehearsed to the jury in argument, the appellate courts will interfere. They will, as already seen, defer to the conclusion of the trial court, whose presiding judge was in a much better position to know whether prejudice really accrued to the accused party than the Appellate Court is, especially where the evidence as to the nature of the remarks is conflicting; and on a similar principle they will not control the trial judge who has heard the evidence and tried the cause, in his decision upon the question how far the remarks were warranted by the evidence, when it is not made clearly to appear that they were unwarranted." Under that rule, which has been substantially followed by this court, we cannot say that such prejudicial error is shown to have been committed as would justify this court in reversing the judgment of conviction. The objection that the presiding judge made improper remarks, prejudicial to the defendants, is not sustained by the record.

Objection is urged to numerous instructions given by the court on behalf of the People. Some of these are very voluminous and are set out at length in the opinion of the Appellate Court. No useful purpose would be served in repeating them here. Our examination of each of them, considered in connection with those given on behalf of the defendants, has led us to the conclusion that neither of these plaintiffs in error has any just ground of complaint that his rights were not fully presented to the jury by the instructions.

It appears from the record that the court, after reading an instruction asked by the plaintiffs in error, orally withdrew the same, and it is claimed that by so doing the jury were led to believe that another instruction (No. 1 given on behalf of plaintiffs in error) was also withdrawn. It is not claimed that the instruction withdrawn should have been given, and we see no just ground for the contention that the jury were thereby misled to believe that instruction No. 1 was withdrawn.

The jury, after having retired to consider of their verdict, sent to the court, by the bailiff in charge of them, a communication inquiring whether they had the power to fix the term of imprisonment in case defendants were found guilty. The court thereupon had the jury brought into the court room and in writing instructed them on this point. It is not claimed that the instruction was wrong, but that it was not given in the presence of certain defendants and their counsel. The action of the court was not erroneous for several reasons. So far as shown by the record, neither of the plaintiffs in error was absent when the instruction was given. It does appear that they were present on that date, and the presumption is, in the absence of anything to the contrary, that they were present at every stage of the proceeding. (*Schirmer* v. *People*, 33 Ill. 276.) Plaintiffs in error attempt to show the contrary by affidavits filed in support of their motion for a new trial, but such affidavits cannot be taken as evidence of what occurred at that particular time. (*Dreyer* v. *People*, 188 Ill. 40; *Mayes* v. *People*, 106 id. 306; *Scott* v. *People*, 141 id. 195; *Peyton* v. *Village of Morgan Park*, 172 id. 102.) If plaintiffs in error were absent from the room, as alleged in these affidavits, they cannot take advantage of such absence, for the reason that they voluntarily absented themselves. *Sahlinger* v. *People*, 102 Ill. 241.

Complaint is next made of the action of the Appellate Court in affirming the judgment as to part of plaintiffs in error and reversing it as to others. The claim is made that in a case of conspiracy it must be reversed as to all or affirmed as to all. We deem it sufficient to say that the action of the Appellate Court in that respect is not properly before us for review. The one question for our consideration is whether the conviction was proper as to the plaintiffs in error, and if the case was improperly reversed in the Appellate Court as to the other parties these plaintiffs in error cannot be heard to complain.

The next contention is that the verdict is against the weight of the evidence. The record shows that the plaintiff in error Gallagher, several days prior to the trial, spoke to certain persons with reference to their being present to act as jurors, and he had made arrangement with constable Jones, in O'Donnell & Brady's office, to summon the jurors, and he there informed the constable as to placing pins in the lapels of the jurors' coats, and that these jurors thus marked would be found at the Revere House. He was present at the trial, and after the verdict was rendered put a five-dollar bill in Michael's pocket. He knew all of the jurors who wore the pins, and the arrangement seemed to have been carried out by him and under his instructions. The evidence also, to say the least, strongly tended to prove that plaintiff in error O'Donnell was with Gallagher at the Revere House when the jurors were marked with the pins and was introduced to them; that he was present at the time these jurors were summoned by the constable and had conversations with them; that he informed the constable that he would find more jurors at the Palace Hotel, and he seemed to have been familiar with everything that was done with reference to the case.

From a consideration of the evidence we are of the opinion that it is proven that both the plaintiffs in error were guilty as charged in the indictment, beyond a reasonable doubt, and the jury were justified in so finding. On the whole record we are convinced that plaintiffs in error have had a fair and impartial trial and that no error has been shown. The judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*

SCOTT, J., dissenting: In my judgment the improper and intemperate argument of the attorney making the closing address for the prosecution was highly prejudicial to the rights of defendants below, for which reason the judgment should be reversed and the cause remanded.