THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM OTIS TAYLOR, Defendant-Appellant.

Fourth District   No. 14918

Opinion filed February 14, 1979.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, and James Gold, law student, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

Defendant, William Otis Taylor, was charged by information with escape from the Champaign County jail on August 5, 1977. (Ill. Rev. Stat. 1975, ch. 38, par. 31—6.) Following a jury trial, defendant was found guilty and, thereafter, sentenced to a term of imprisonment of 2 to 6 years. This sentence was to run consecutively to defendant's other sentences for four previous convictions.

At the trial, defendant did not dispute the State's evidence that he was one of two individuals who escaped from the Champaign County jail during the early morning of August 5, 1977.

Kenneth L. Roderick, a civilian jailer, testified for the State that he had discovered defendant and Eugene Taliaferro missing from their cell in the infirmary of the jail at about 4 a.m. Roderick had periodically checked the defendant and Taliaferro during the course of the night and had not noticed anything unusual through his 3 a.m. check.

John W. Ennis, an Illinois State police officer, apprehended the defendant and another man as they were walking on the shoulder of Interstate Highway 57 at about 6:30 a.m. on August 5. The defendant identified himself to Ennis as William James. The two men then fled from Ennis and he followed and apprehended them. Ennis testified that in his opinion the defendant was not under the influence of drugs at the time of his arrest. On cross-examination, however, Ennis admitted that most of his experience with intoxicated persons had involved individuals under the influence of alcohol rather than drugs.

Defendant, testifying in his own behalf, stated that he occasionally saved Dalmane and Valium tablets prescribed and given to him at the jail. These two drugs were among those which had been prescribed for the defendant while in jail. According to the defendant, on August 4, 1977, he took four Valium tablets and one Dalmane tablet, in addition to four Elavil tablets given to him by Taliaferro. He and Taliaferro also "snorted" an unknown drug out of a capsule. Defendant denied that he intended to escape or that he had discussed an escape earlier that night with Taliaferro. He recalled only being in his cell that night and later being in the cell in which he was placed following his apprehension.

On cross-examination, defendant admitted that David Graham had entered his and Taliaferro's cell on the night in question. Graham left when the defendant told him he and Taliaferro were having a private conversation. Graham, however, during direct examination admitted that he had not overheard the two men's conversation. Graham also testified that he observed the defendant and Taliaferro sniffing Valium. He stated that he was certain the defendant was under the influence of drugs because defendant, contrary to his normal character, was alert and hyperactive.

Two witnesses testified to the effect upon an individual from a dosage of drugs similar to that purportedly taken by defendant on the night in question. Daniel Pugh, a physician, specializing in psychiatry, testified that the most likely effect upon an individual from such a dosage would be sleepiness or drowsiness. He further stated, however, that a person "might conceivably become frightened or inappropriate in their behavior and they might not remember what happened after they recovered from the intoxication." Pugh described this reaction as "acute brain syndrome," a temporary illness which could cause, in addition to intoxication, memory impairment and disorientation, fearfulness, hallucinations, and unpredictable emotions. Such an individual also might be rendered incapable of making plans or forming specific thoughts and executing them.

Questioned as to the facts of the present case, Pugh testified that although defendant's actions could be consistent with acute brain syndrome the more probable reaction would be drowsiness. He further testified that given the circumstances involving the defendant there was only a 5- to 10-percent chance that defendant's actions were caused by acute brain syndrome.

Detlef Bieger, a professor of pharmacology, testified that an individual ingesting the combination of drugs allegedly taken by the defendant could develop organic brain syndrome, which would be characterized by the individual becoming completely confused and disoriented. He testified that one so afflicted could suffer from amnesia

and would not have the capacity to be cognizant of what he was doing.

Defendant initially contends that the trial court improperly instructed the jury concerning his defense that his voluntary intoxication rendered him incapable of forming the requisite intent to commit the crime. The court refused defendant's Illinois Pattern Jury Instruction, Criminal, No. 24.02 (1968) (hereinafter cited as IPI Criminal) and instead gave the State's non-IPI Criminal instruction. This instruction provided:

> "[A] voluntarily induced drugged condition is not an excuse for commission of a crime. If you believe from the evidence that the defendant became drugged and while in a drugged condition escaped * * * as charged in the information, his drugged condition would be no excuse for his unlawful act, unless you further believe * * * that his drugged condition was such that at the time such act was committed the defendant was wholly incapable of forming an intent to escape and had not formed such intent prior to his becoming drugged."

Supreme Court Rule 451(a) mandates the use of IPI Criminal instructions, unless the court determines that they do not state the law. (58 Ill. 2d R. 451(a).) In this case, the State concedes that the proffered IPI instruction clearly stated the law. The trial court did not find otherwise.

The State, however, first seeks to justify the use of this instruction by relying on the case of *People v. Dolatowski* (1968), 94 Ill. App. 2d 434, 237 N.E.2d 553. The instruction in *Dolatowski* was identical to the one in the instant case except that it contained the qualification that the defendant's voluntary intoxication should be established "beyond a reasonable doubt." We note, however, that inasmuch as the court reversed the defendant's conviction in *Dolatowski*, its implicit approval of the instruction as otherwise given was merely dicta. Further, the intoxication statute upon which the *Dolatowski* instruction was based did not read as does the present section. (Ill. Rev. Stat. 1975, ch. 38, par. 6—3.) Finally, the *Dolatowski* decision preceded the effective date (January 1, 1969) of Supreme Court Rule 451. Thus, in considering the propriety of the instruction as given in the present case, we do not find *Dolatowski* to be persuasive.

Alternatively, the State argues that, had there been no evidence establishing defendant's intention to escape preceding his voluntary induced drugged condition, the use of IPI Criminal No. 24.02 would have been entirely acceptable. The State explains its departure from that position and seeks to justify the instruction given and the refusal of defendant's IPI Criminal instruction on the ground that, although the IPI instruction is legally correct, it is incomplete and does not reasonably apply to the factual situation present in this case. In support thereof, the State refers to the evidence that the defendant, sometime around 7 or 8

p.m. on the evening of the escape, had a conversation with his fellow inmate, Taliaferro, who subsequently escaped with the defendant.

There was no evidence produced as to the subject matter of that conversation. The subsequent escape may well have been what the defendant and Taliaferro were talking about, but no logical inference can be drawn from the evidence to support that conclusion. Speculating on the subject discussed at this encounter offers unlimited possibilities. From these varied possibilities to select one and to use it as the justification for the abandoning of Supreme Court Rule 451(a), which mandates the use of the IPI Criminal instructions, is indeed a fragile position.

The instruction, as given, directs the jury that the defendant's voluntarily induced drug condition would not be an excuse for the crime, unless they believed from the evidence that his condition was such that at the time the act (escape) was committed the defendant was wholly incapable of forming an intent to escape and had not formed such intent prior to becoming drugged. It seems likely that the jury had no reason to consider the possibility that the defendant had planned the escape prior to the ingestion of the drugs until the instruction implanting the suggestion was actually given to them. The uncertainties as to the topic of conversation with Taliaferro might well be appropriate in the presentation of the closing argument, but to incorporate such a concept into the judge's charge to the jury seems to violate the court's obligation to remain impartial and avoid slanted instructions.

■■ ■ Aside from this portion of the instruction not being supported by the evidence, we also believe that it failed to accurately state the law. The wording of the instruction informs the jury in effect that the defendant's voluntary intoxication would *not* constitute a defense to the crime (even if the defendant were in fact incapable of forming the requisite intent at the time of the act) *if* the defendant had formed an intent to escape prior to becoming drugged. Criminal liability, with the exception of so-called strict liability crimes, is dependent upon the simultaneous occurrence of the defendant's requisite mental state and the criminal act. See Ill. Rev. Stat. 1975, ch. 38, par. 4—3(a) ("A person is not guilty of an offense * * * unless, * * * he acts while having one of the mental states * * *" described by the Code.).

Certainly evidence of a defendant's prior intent to commit a crime and the subsequent commission of the crime is highly probative of his mental state at the time the criminal act was performed. Obviously, a defendant's prior expression of an intent to commit a crime and his subsequent commission of that crime could render utterly improbable any claim by him that because intoxicated he lacked sufficient intent to commit the crime. Nevertheless, if in fact a defendant were totally incapable of forming an intent to escape *at the time of his escape,* such a

defendant could not be held accountable based on a prior expression of an intent to escape. The instruction was likewise erroneous on this basis.

Here, as is too often the case, courts of review must ponder over the results of overzealousness in prosecution which frequently fails in its objective and results in overkill that forces the review court to consider setting aside what may otherwise be a fair and just result. Clearly the instruction should not have been used. Nevertheless, not every error in the instructions given warrants reversal of the cause. Reversal is inappropriate unless it is demonstrated that the defendant was so prejudiced by the instruction as to affect the outcome of the verdict. (*People v. Kurzydlo* (1974), 23 Ill. App. 3d 791, 320 N.E.2d 80.) In reviewing the evidence, we note that defendant's own expert witness, Dr. Pugh, testified that it was very unlikely (5 to 10 percent chance) that the defendant would have suffered acute brain syndrome to the degree sufficient to impair his reason. In addition, the jailer, Roderick, stated that, during the course of his periodic checks of the inmates, he noticed nothing unusual with respect to the defendant's actions. Finally, we deem the defendant's response in giving Officer Ennis a false name and immediately thereafter fleeing from his presence further supportive of the State's case.

The instruction, aside from those portions we have found objectionable, adequately, although lengthily, described the defense of voluntary intoxication. In view of this, and based on the strong evidence contrary to the defendant's testimony, we believe the instruction, as given, could not have affected the jury's verdict. Thus, the error resulting from the improper portion of the instruction was merely harmless.

Defendant secondly contends that his conviction should be overturned because of the admission into evidence of his prior conviction for escape. Relying on *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, defendant maintains that the prejudicial effect of that particular conviction outweighed its probative value concerning his credibility.

Without considering the validity of the *Montgomery* argument as it relates to the prior escape conviction, we find the defendant's position on this issue untenable. During direct examination, defense counsel elicited testimony by the defendant that he had been convicted of burglary, aggravated battery, and escape, and that he had pleaded guilty to each of these charges. Although the State, during its case in chief, introduced a stipulaton reciting that the defendant had a previous felony conviction, it was admitted simply to establish an element of the crime charged, *i.e.*, that the defendant had been convicted of a felony at the time of his escape. (See Ill. Rev. Stat. 1975, ch. 38, par. 31—6(a).) It is well established that a defendant cannot on review object to testimony which

he himself introduced. *People v. Forbis* (1973), 12 Ill. App. 3d 536, 298 N.E.2d 771; see also *People v. Price* (1976), 41 Ill. App. 3d 1059, 355 N.E.2d 732.

Defendant finally asserts that he was denied a fair trial by the court's refusal to allow him to explain the circumstances of his prior escape conviction. During direct examination of the defendant, defense counsel posed the following question:

"Mr. Knashishu: Q. That other escape that you pled guilty to, you turned yourself in didn't you, Mr.—"

As the State objected the defendant responded affirmatively to this inquiry. Defense counsel, thereafter, offered to prove that the defendant would have testified that his prior escape was occasioned without force, in that he was mistakenly released by jail officials who mistook him for another. The court sustained the State's objection, but the preceding question and response were not stricken from the record nor was the jury instructed to disregard it.

Defendant maintains that he should have been permitted to offer his explanation of the prior conviction. It is proper to permit the accused to introduce evidence that his prior conviction was being appealed. (*E.g., People v. Bey* (1969), 42 Ill. 2d 139, 246 N.E.2d 287.) We also note that an accused should be permitted, as was the defendant here, to show that he entered a plea of guilty to the offense. See *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058 (Reardon, J., specially concurring).

*Bey*, however, is not applicable to the present case. In addition, the defendant, beyond merely showing that he had pleaded guilty to the previous charge, wanted to explain the overall circumstances of his prior conviction. In *Gallagher v. People* (1904), 211 Ill. 158, 71 N.E. 842, it was held that to permit evidence of a pardon of a conviction used to impeach the accused "would simply * * * introduce into the case a collateral issue." (211 Ill. 158, 169, 71 N.E. 842.) Because the defendant's prior escape was not accomplished through the use of force does not appear in any manner to be relevant to his credibility. From this perspective we believe that the defendant's tendered explanation of the prior conviction was properly refused. We further note that the evidence that the defendant had surrendered himself to the authorities in relation to this previous charge was before the jury and not removed from their consideration. Further elaboration of the incident was not warranted to ensure defendant a fair trial.

We conclude from the foregoing that the judgment of the trial court should be affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.