THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PAUL REPPA, Defendant-Appellant.

First District (3rd Division)    No. 80-1664

Opinion filed March 17, 1982.

Ralph Ruebner and Bradley S. Bridge, both of State Appellate Defender's Office, of Chicago, and Elaine Somogyi, law student, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and David S. Shapiro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant, Paul Reppa, was convicted of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2) and sentenced to 20 years in the Department of Corrections. On appeal defendant argues that (1) he was not proved guilty beyond a reasonable doubt; (2) he was not adequately represented by counsel; (3) admission of evidence of another crime constituted error; (4) he was prevented from testifying as to his state of mind at the time of his arrest; (5) he was prevented from testifying that he pleaded guilty to prior offenses used by the State for impeachment; (6) his motion for mistrial should have been granted where certain items found by the police were mentioned during an officer's testimony but were not offered into evidence; (7) the court erred in giving an instruction regarding exclusive, unexplained possession of recently stolen property; and (8) the court erred in refusing to give instructions on theft tendered by defendant. We affirm.

Around 2 a.m. on August 29, 1979, a man wearing a ski mask and a green army jacket and holding a gun entered the Yale and Harvard Tavern at 204 154th Place in Calumet City. The man took money from the

cash register and from nearby drawers, including half dollars marked with red fingernail polish which the tavern owner gave to patrons to use in the jukebox. Shortly thereafter, a man similarly attired and also armed entered the Park View Inn at 248 153rd Place, Calumet City. In addition to taking currency, the robber took two personal checks and a small leather folder from the tavern's owner.

The police responded to dispatch calls relating to the two tavern robberies. One officer saw a man running down an alley near the Park View Inn. The officer pursued the man but lost sight of him when he entered a yard. The man was then seen running across the street. The block was secured by various police officers, and a yard by yard search was conducted. As a result of this search, defendant was observed crouching under a porch. When defendant emerged, a green army jacket fell to the ground. A search of defendant and the jacket revealed large rolls of currency, half dollars with red marks on them, two checks and part of an old wallet. Defendant was placed under arrest.

At trial, defendant testified that while walking home around 2 a.m. on August 29, he saw a person come out of the Park View Inn, go down the alley, and toss his green army coat into a garbage can. Being curious, defendant went through the pockets of the jacket where he found some loose change and currency. As he began to proceed home, he saw a squad car with its lights flashing. Defendant fled down the alley and eventually hid under a porch because he did not feel safe when police were around.

Defendant first argues that he was not proved guilty beyond a reasonable doubt. He contends that the eyewitness testimony was weak and contradictory while his exculpatory testimony was corroborated. We disagree, since there was adequate evidence to prove defendant guilty beyond a reasonable doubt.

Although neither the owner of the Yale and Harvard Tavern nor the owner of the Park View Inn could identify defendant as the man who robbed their establishments, they both described the robber as wearing a green army jacket and ski mask and carrying a gun. They also described the items taken during the robbery. When defendant was arrested a short time after the robberies, he had a green army jacket and the stolen items with him.

The most direct evidence that defendant was the robber came from an "earwitness." One of the patrons of the Park View Inn testified that he recognized the voice of the robber as that of defendant, whom he knew by the nickname Squirrel. The witness had known Squirrel for nine years and had heard his voice hundreds of times, the last time being approximately three months prior to the robbery. Although the witness could not immediately recall defendant's proper name, he was able to associate defendant with a high speed chase to which he had been a witness. While

there was some uncertainty as to whether this earwitness was able to identify defendant's voice at the police station because it was distorted by an electronic device, the witness testified that he was positive he heard defendant's voice in the tavern.

In addition, a police officer testified that he chased a suspect down an alley by the Park View Inn. Although he lost sight of the suspect, he soon saw the suspect run across the street. He subsequently arrested this suspect after finding him hidden under a porch. The officer recognized him from his height, general build and clothing as the man he had chased down the alley. This man was the defendant.

The jury, as trier of fact, has the task of determining the credibility of witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733, 734.) The reliability of the identification testimony is clearly an issue of fact to be resolved by the jury. (*People v. Jackson* (1977), 69 Ill. 2d 252, 261, 371 N.E.2d 602, 606.) A jury is not required to accept the exculpatory statements of the defendant. (*People v. Daniels* (1979), 76 Ill. App. 3d 646, 651, 395 N.E.2d 163, 167.) Here, the evidence is merely conflicting, and we will not substitute our judgment for that of the trier of fact. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733, 735.

Defendant next contends that he did not receive adequate representation. Specifically, defendant argues that his counsel's decision to withdraw his motion to quash his arrest and to suppress evidence establishes his counsel's incompetency. We disagree. Failure of counsel to file a motion to quash an arrest or suppress evidence is not *per se* incompetency. (See *People v. Gray* (1981), 95 Ill. App. 3d 879, 884, 420 N.E.2d 856, 861.) Competency must be determined from the total facts and circumstances of each case. (*People v. Childs* (1981), 95 Ill. App. 3d 606, 616, 420 N.E.2d 513, 521.) The question of whether or not a motion to quash an arrest or suppress evidence should be filed is generally considered to be a matter of trial strategy, and our review of counsel's competence does not extend to this area. See *People v. Hines* (1975), 34 Ill. App. 3d 97, 100-01, 339 N.E.2d 489, 492.

■■ Here, the record reveals that counsel for defendant did file a motion to quash the arrest and suppress the evidence recovered at the scene of the arrest. The fact that defense counsel subsequently withdrew the motion does not support defendant's contention that he was incompetent. Before seeking leave to withdraw the motion, defense counsel informed the court that he had spoken with his colleague who had drafted the motion and with the State. This suggests that counsel's decision not to pursue the motion was based on informed judgment and was a matter of trial strategy. Moreover, it is clear that defendant's motion would not have been granted. The evidence shows that the arrest was legal since the

police had reasonable grounds to believe that defendant had committed an offense (Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c)) and that seizure of the evidence in the army jacket was proper since it resulted from a search of defendant's immediate area for the purposes of protecting the officers from attack and discovering the fruits of the crime (Ill. Rev. Stat. 1979, ch. 38, par. 108—1(a), (c)). Defense counsel was not obligated to pursue specious claims of constitutional deprivation. (*People v. Ruple* (1980), 82 Ill. App. 3d 781, 787, 403 N.E.2d 129, 133.) Finally, a review of the record discloses that defense counsel performed in a competent manner during all phases of trial. For all these reasons, defendant's argument regarding the incompetence of his counsel must fail.

■■ Defendant also argues that reversible error occurred when the owner of the Yale and Harvard Tavern was permitted to testify regarding the armed robbery of his establishment since defendant was only being tried for the armed robbery of the Park View Inn. Generally, evidence of crimes other than the one for which the accused is being tried is not admissible. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 492.) Such evidence is admissible, however, if it fairly tends to prove the offense charged by placing the defendant in proximity to the time and place of the offense, aiding or establishing the perpetrator's identity, or tending to prove design, motive or knowledge. (*People v. Riley* (1981), 94 Ill. App. 3d 775, 776, 419 N.E.2d 106, 108; see *People v. Diaz* (1979), 78 Ill. App. 3d 277, 279-80, 397 N.E.2d 148, 150.) Plainly, the evidence regarding the armed robbery of the Yale and Harvard Tavern falls within these exceptions. The armed robbery of that tavern occurred only minutes before the armed robbery of the Park View Inn, and defendant admits in his brief that the two robberies "were undoubtedly committed by the same person." The decision as to whether the probative value of this other crime evidence outweighed any prejudicial impact it may have had was a proper subject for the trial court's discretion, and we cannot say that the trial court abused its discretion in admitting this evidence. Furthermore, the jury was given a limiting instruction regarding the permissible use of this evidence. (See *People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 260, 402 N.E.2d 677, 684.) We conclude that the other crime evidence was properly admitted.

In his next argument, defendant contends that he was denied a fair trial because he was prevented from testifying as to his state of mind at the time of his arrest. According to defendant, he was allowed to testify on cross-examination that he did not feel safe when the police were around but was not allowed to explain why during redirect examination.

The record reveals that on redirect examination, defendant was able to testify that he saw a police officer shoot a civilian in connection with a high-speed chase which occurred in 1975. Defendant was not involved in

the arrest in that case. He testified for the police officer before the grand jury. Defense counsel then asked, "And the person that was shot was unarmed, right?" At this point, the prosecutor objected, and the objection was sustained.

■■ We agree with defendant that evidence of defendant's mental state at the time he fled was both competent and proper. (*People v. Manion* (1976), 40 Ill. App. 3d 362, 369, 352 N.E.2d 39, 45.) However, even if we were to conclude that the trial court erred when it sustained the prosecutor's objection in regard to the question set forth above, defendant was not prejudiced by this error. Defendant's testimony was sufficient to acquaint the jury with an explanation of his flight which was compatible with his innocence. (See *People v. Davis* (1963), 29 Ill. 2d 127, 131, 193 N.E.2d 841, 844.) Moreover, we cannot say that the outcome of the trial would have been different if the omitted testimony had been allowed in view of the overwhelming evidence presented against defendant. See *People v. Wood* (1977), 53 Ill. App. 3d 987, 990, 369 N.E.2d 209, 211, *rev'd on other grounds* (1978), 67 Ill. 2d 595.

■■ Defendant also claims as error the fact that he was prevented from testifying that he had pleaded guilty to charges in other matters which were used by the State to impeach him, since this prevented him from rehabilitating himself. The decisions in *People v. Ridley* (1975), 25 Ill. App. 3d 596, 323 N.E.2d 577, and *People v. Taylor* (1979), 68 Ill. App. 3d 680, 386 N.E.2d 159, suggest that an accused should be permitted to show that he entered a plea of guilty to a prior offense and that when he was in fact guilty, he admitted it. However, while it may have been error for the court to have prevented defendant from informing the jury of the guilty pleas, this error does not require reversal of defendant's conviction. In this case, defendant's testimony that his prior convictions resulted from guilty pleas could not have so bolstered his credibility that the outcome of the trial would have been different had this testimony been allowed.

Next, defendant argues that his motion for mistrial should have been granted because the State elicited testimony from a police officer that the police had found a gun and hat, and the State failed to introduce either item into evidence. The testimony given by this officer during direct examination suggested that no gun or ski mask was found when the police searched the area following defendant's arrest. During redirect examination, the officer was asked whether these items were recovered, and he implied that they were. At this point, defendant objected, and the objection was sustained. The court further stated, "There will be no more conversation about it." The State, however, proceeded to ask whether it was correct that these items were not found on the date of the robbery, and the officer replied, "That is correct." Defendant again objected, and the court again sustained the objection and admonished the State that

there would be no more discussion on this matter. Defendant then moved for a mistrial, and the court denied the motion. It also instructed the jury to disregard the officer's testimony that a cap and gun were found subsequent to the date of the robbery, since nothing in the testimony indicated that these items had anything to do with this proceeding. The court concluded, "[Y]ou must strike that testimony from your minds and never consider it."

■■ Although the State should not have introduced testimony regarding the gun and ski mask since there was no evidence linking these items to defendant or to the crime (see *People v. Liapis* (1972), 3 Ill. App. 3d 864, 867, 279 N.E.2d 368, 370), and plainly should not have attempted to pursue this line of inquiry when the court had admonished it not to do so, the court did not err in denying defendant's motion for mistrial. As soon as defendant objected to the questions posed by the State, the objections were sustained. Moreover, the jury was instructed in strong, clear language to disregard the improper testimony. We conclude that under the circumstances of this case, any error which may have resulted from this testimony was promptly cured. (*People v. Outlaw* (1979), 75 Ill. App. 3d 626, 646, 394 N.E.2d 541, 555.) In addition, defendant's contention, made during oral argument, that defendant was prejudiced because the testimony gave rise to inferences that he was attempting to prevent the jury from hearing evidence and that the State had even more evidence than it presented is without merit. The court informed the jury that the testimony was being stricken because there was no connection between the items mentioned by the police officer and this case.

Another contention raised by defendant concerns the instruction given to the jury that if it found defendant had exclusive, unexplained possession of recently stolen property, it could infer that he obtained the property through armed robbery. (Illinois Pattern Jury Instructions, Criminal, No. 13.21 (2d ed. 1968).) In his reply brief, defendant withdrew that portion of his argument which dealt with the propriety of giving this instruction in light of the Illinois Supreme Court's decision in *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151. Thus, we shall only address that portion of defendant's argument which involves comments made by the prosecutor during his closing argument relative to this instruction.

■■ Defendant argues that the prosecutor improperly argued to the jury that the inference arising from the exclusive, unexplained possession of recently stolen property "in and of itself is enough to convict the defendant of armed robbery." We agree with defendant that this comment, as well as a similar statement made during the rebuttal portion of the State's closing argument, was improper and erroneous. The inference of robbery based on unexplained, exclusive possession of recently stolen property is a permissive, not mandatory, inference. (See *People v.*

*Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) The inference, standing alone, is insufficient to prove robbery beyond a reasonable doubt. (84 Ill. 2d 415, 423, 420 N.E.2d 151, 155.) It must also be shown that (1) there is a rational connection between defendant's recent possession of property stolen during the robbery and defendant's participation in the robbery, (2) defendant's guilt of robbery is more likely than not to flow from his recent, unexplained and exclusive possession of robbery proceeds and (3) there is evidence corroborating defendant's guilt. See 84 Ill. 2d 415, 424, 420 N.E.2d 151, 155; *People v. Ross* (1982), 103 Ill. App. 3d 883, 885-86.

■■ Here, although the prosecutor erroneously told the jury that defendant's possession of the currency, checks and coins taken during the robberies of the two taverns was sufficient to support a conviction, we conclude that this error does not warrant a reversal of defendant's conviction. Immediately preceding the improper statement, the prosecutor informed the jury that it would be instructed by the court regarding defendant's possession of stolen property. The court did, in fact, correctly instruct the jury on this point. In addition, immediately following the improper comment, the prosecutor stated that there was much more evidence to support a conviction and proceeded to discuss the other evidence. Therefore, the prosecutor's argument in favor of conviction did not rely solely on the inference raised by defendant's possession of recently stolen property. Since there was other evidence which was sufficient under the *Housby* criteria to support an inference of robbery from defendant's possession of recently stolen property, and the jury was properly instructed by the court, we conclude that defendant was not prejudiced by the prosecutor's remarks. It follows that the conviction should not be reversed because of the remarks. See *People v. Radford* (1978), 65 Ill. App. 3d 107, 113, 382 N.E.2d 486, 490-91.

■■ Finally, defendant argues that the court erred when it refused to give theft instructions which he tendered, since the jury could have found him guilty of theft by obtaining control over stolen property. We disagree. In *People v. Kimble* (1980), 90 Ill. App. 3d 999, 414 N.E.2d 135, we held that a defendant cannot be convicted of theft if he has only been charged with robbery. In *Kimble,* we determined that theft is not an included offense of robbery. We therefore reject defendant's contention that the jury should have been instructed on theft because it is an included offense of the crime with which he was charged, armed robbery.

Although we recognize that defendant's trial was not free from error, we cannot say that the errors, whether considered individually or in total, denied defendant a fair trial. Accordingly, the judgment is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.