AUGUSTIN BAUTISTA, Plaintiff-Appellant, v. VERSON ALLSTEEL PRESS COMPANY, Defendant-Appellee.

First District (2nd Division) No. 85—3066

Opinion filed January 27, 1987.

Gerard A. Facchini, of Law Offices of Gerard A. Facchini, and William J. Harte and Pamela S. Menaker, both of William J. Harte, Ltd., both of Chicago, for appellant.

William D. Kelly, of Law Offices of E. James Gildea, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Augustin Bautista, filed a product liability action against defendant, Verson Allsteel Press Company. Plaintiff alleged the machine, manufactured by defendant, was unreasonably dangerous in its improper design, lack of safety devices, and inadequate warnings relative to hazards of operation. A jury verdict was entered in favor of defendant. After the denial of plaintiff's post-trial motions, this appeal was filed.

Plaintiff was injured on July 14, 1975, while operating a press brake machine manufactured by defendant. It was one of six machines sold to plaintiff's employer, G & G Metal Forming, in April of 1969. Plaintiff, speaking only Spanish and unable to read or write in Spanish or English, began working for G & G Metal 2½ months before the accident.

The function of a press brake is to bend and shape metal. The press itself is approximately 48 inches wide and 6 feet high. During operation, the ram, the movable upper section of the press, descends upon the bed, or lower section of the press. Dies are attached to the ram and the bed. When the ram descends upon the bed, the dies press the metal into the desired shape.

The area between the ram die and bed die is referred to as the "point of operation." Without insertion of the dies, there is no point of operation. The ram and bed are 7½ inches apart without a point of operation. The press can accommodate innumerable dies, the size and function of which may vary. Defendant sold this machine without dies and, therefore, without a point of operation. The variety of the dies, the size and shape of the parts made, and the variety of feeder systems all affect the selection of a suitable point-of-operation safety device.

The movable ram is controlled by a brake and clutch. The actual engaging mechanism, called a treadle, is manipulated by the operator's foot. The treadle is 7 to 8 inches off the floor. When the treadle is pressed, the clutch is engaged and the gearing mechanism causes the ram to come down with a 16-ton force. When the treadle is released, the clutch is disengaged and simultaneously, the braking mechanism is engaged. Releasing the treadle will stop the ram immediately at midcy-

cle.

Due to the height of this machine, it was more comfortable for the operator to sit down while operating. The treadle, being 7 to 8 inches off the floor, required the operator to pick his foot up and down that height in order to engage and disengage the gearing mechanism for each operation. In addition, plaintiff's employer attached a table which extended across the front of the machine. This further restricted the area in which the operator could move his leg to operate the treadle. It was more comfortable for the operator to keep the treadle depressed, causing the ram to cycle continuously.

The machine included a warning plate in yellow letters against a black background which read, in part: "WORK SAFELY—Keep hands out of closing dies. Heed verbal and written instructions. *** See caution instructions in machine manual."

On the day of the accident, plaintiff was shown how to operate the machine. During the course of the day, plaintiff saw the metal become caught in the die many times. When this occurred, he would quickly reach in and remove the metal. However, plaintiff would keep the treadle depressed, which caused the ram to cycle continuously while he was removing the damaged metal. Plaintiff had been instructed to release the treadle after each bending operation. At approximately 2 p.m. that day, when plaintiff reached in to remove a piece of metal, the ram came down severing three fingers on his left hand.

During the course of the trial, plaintiff learned that a list was compiled in 1975 of the types of Verson machines on which injuries occurred, the nature of the injuries, and the cause of such injuries. In light of this, plaintiff represented to the court that defendant was not complying with discovery. Plaintiff requested an opportunity to depose defendant's president concerning these accidents and review all defendant's files involving claims of injury. Although both parties desired to allow the trial to continue its course, plaintiff requested that he have the right to reopen his case in the event that additional information is discovered regarding any prior accidents. The court granted these requests and plaintiff rested his case.

The deposition of defendant's president revealed he had thrown out two "Product Reliability" files. The president testified that the files contained unrelated information and made no mention of prior accidents or the 1975 list of injuries. One of the files was retrieved from the office waste basket. It was determined that the information contained in that file was not in the request to produce.

After defendant completed its case in chief, plaintiff reopened his case. The jury heard testimony from defendant's president and two

other employees testifying as adverse witnesses. This testimony showed that each made a search for the 1975 list; however, the list was not among the company's records.

The jury found for defendant. The judge denied plaintiff's post-trial motions. This appeal followed.

The issues to be determined in this appeal are: (1) whether the jury's verdict was against the manifest weight of the evidence in finding for defendant; (2) whether due process was obstructed by defendant's alleged failure to produce information; (3) whether the trial court erred in allowing a life-sized sketch of the machine to go to the jury room; and (4) whether remarks of counsel prejudiced plaintiff's right to a fair trial.

## I

■■ A strict products liability case is established upon proof that plaintiff's injuries resulted from a defect or condition in the product which rendered it unreasonably dangerous and the defect or condition existed when the product left the manufacturer's control. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.

■■ Findings of a jury cannot be disturbed by a reviewing court unless they are clearly erroneous or against the manifest weight of the evidence. (*Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 439, 359 N.E.2d 1078.) When considering whether the verdict was contrary to the manifest weight of the evidence, the reviewing court must view the evidence in the light most favorable to the appellee. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232.) Therefore, in determining whether this jury's verdict of no liability was against the manifest weight of the evidence, this court must view the evidence in the light most favorable to defendant.

### A. Safety Device

Plaintiff urges that the jury verdict was against the manifest weight of the evidence where it was undisputed that the machine was delivered by defendant absent any safety devices at the point of operation. He asserts that this absence in itself constitutes a defect.

■■ A manufacturer is required to adopt any and all devices, the absence of which make his product unreasonably dangerous. (*Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 340 N.E.2d 276.) However, this court has held that "[t]he multifunctional machine is not defective and therefore not unreasonably dangerous merely because of the absence of all the varied safety devices which might or might not be required for its safe operation. The essential element of

reasonability cannot be disregarded." *Rios v. Niagara Machine & Tool Works* (1973), 12 Ill. App. 3d 739, 746, 299 N.E.2d 86, *aff'd* (1974), 59 Ill. 2d 79.

In *Rios*, it was undisputed that the machine was sold without a safety device. The court stated that although certain operations of this machine required the operator to place his hands in the danger zone, this was not a defect because the machine did not fail to perform in a manner reasonably to be expected in the light of its nature and intended function. The court stated that "to extend strict liability to that situation would place the manufacturers in the impossible position of being compelled to furnish a number of different safety devices covering every conceivable type of *** operation." 12 Ill. App. 3d 739, 745, 299 N.E.2d 86.

■ In the case at bar, plaintiff alleged that the machine was defective for lack of a point-of-operation safety device at the time of manufacture. The evidence revealed that the machine was a power component of a manufacturing system and it was sold without dies and had no point of operation to be guarded against. Plaintiff failed to produce any evidence in support of the proposition that the machine was unreasonably dangerous for lack of a point-of-operation device at the time of sale. There was credible evidence from which the jury could conclude that the machine could not be equipped with a safety device without a point of operation. Therefore, the verdict for defendant was not against the manifest weight of the evidence.

## B. MACHINE DESIGN

Plaintiff also argues that the jury verdict is against the manifest weight of the evidence in that evidence was presented proving a design defect rendering the machine unreasonably dangerous.

■ A jury verdict should not be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony. (*Turner v. Chicago Transit Authority* (1984), 122 Ill. App. 3d 419, 425, 461 N.E.2d 551.) Only if the verdict was palpably erroneous and wholly unwarranted (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 415, 458 N.E.2d 530), was clearly the result of passion or prejudice (*Ogg. v. City of Springfield* (1984), 121 Ill. App. 3d 25, 42, 458 N.E.2d 1331), or appears to be arbitrary, unreasonable, and not based upon the evidence will it be overturned (*Martin v. Zucker* (1985), 133 Ill. App. 3d 982, 990-91, 479 N.E.2d 1000).

Plaintiff's expert testified that the design was unreasonably dangerous because the machine was too short. Defendant's expert dis-

agreed. Both sides had witnesses demonstrate the operation of the machine to support their theories as to whether the machine's dimensions made it unreasonably dangerous. The jury concluded that the machine was not unreasonably dangerous because of its dimensional features.

■ Viewing the evidence in the light most favorable to defendant, it cannot be said that the jury verdict is against the manifest weight of the evidence.

## C. Adequate Warning

Plaintiff further alleges that the jury verdict was against the manifest weight of the evidence in that the warning plate and manual were inadequate.

■ While the duty to warn is a question of law, the sufficiency of the warnings is a question of fact for the jury. *Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 887, 452 N.E.2d 572, *appeal denied* (1983), 96 Ill. 2d 565.

■ According to plaintiff's own witness, Peter Castellan, he told all of the employees, including plaintiff, that they should not put their hands between the closing dies and should not keep the treadle depressed. These verbal safety admonitions were significant because plaintiff could not read in any language. Plaintiff's evidence did not suggest any alternative method for warning persons like himself. There was credible evidence submitted regarding the nature and adequacy of defendant's warnings. The jury concluded that the warning was adequate. Viewing the evidence in the light most favorable to defendant, this conclusion is not against the manifest weight of the evidence and, therefore, will not be disturbed.

## II

Plaintiff next argues that the trial judge abused his discretion and committed reversible error when he failed to enter discovery sanctions against defendant under Illinois Supreme Court Rule 219 (87 Ill. 2d R. 219). He alleged that depositions were not satisfied, interrogatories remained unanswered, and the evidence was withheld and destroyed.

■ The appropriate sanction for a party's noncompliance with discovery rules is a matter within the trial court's broad discretion. (*Finfrock v. Eaton Asphalt Co.* (1976), 41 Ill. App. 3d 1020, 355 N.E.2d 214.) The decision to employ sanctions is also discretionary. (*Ferenbach v. DeSyllas* (1977), 45 Ill. App. 3d 599, 359 N.E.2d 1214.) In the determination of whether to impose sanctions, the trial court must seek to accomplish discovery rather than inflict punishment. *Jones v. Healy* (1981), 97 Ill. App. 3d 255, 422 N.E.2d 904.

■■ In determining whether noncompliance with discovery orders or rules is unreasonable, the standard is whether the offending party's conduct is characterized by a deliberate and pronounced disregard for the discovery rules and for the court. (*Valdivia v. Chicago & North Western Transportation Co.* (1980), 87 Ill. App. 3d 1123, 409 N.E.2d 457.) Factors to be considered are surprise to opposing counsel, prejudicial effect, diligence of opposing counsel in seeking discovery, timely objection, and good faith. *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 1018, 388 N.E.2d 770, *appeal denied* (1979), 79 Ill. 2d 612.

■■ The record contains no evidence of unsatisfied depositions. Plaintiff never sought a hearing and ruling from the court in seeking answers to his interrogatories as required under Supreme Court Rule 213(c) (87 Ill. 2d R. 213(c)). Further, the charges of concealment of evidence are unsupported in the record. However, in light of such allegations, the trial court allowed plaintiff the opportunity to reopen his case and offer evidence that he believed would show that the defendant suppressed material facts. Having asked for and been given this relief, there is no basis now to assert that the trial court abused its discretion.

### III

Plaintiff asserts that the trial court abused its discretion in allowing the life-sized sketch of the machine at issue to be taken to the jury room during deliberations.

■■ ■ It is well established that the court has considerable discretion as to the exhibits which may be taken there. (*Main v. Ballymore Co.* (1983), 116 Ill. App. 3d 1040, 1042, 449 N.E.2d 169, *appeal denied* (1983), 96 Ill. 2d 541.) Absent a determination that the exhibit was both erroneous and prejudicial, a court of review should not overrule the discretion of the trial judge in permitting the jury to take the exhibit in evidence into the jury room during deliberations. *Wilkinson v. Mullen* (1975), 27 Ill. App. 3d 804, 808, 327 N.E.2d 433.

In *Mokrzycki v. Olson Rug Co.* (1960), 28 Ill. App. 2d 117, 124-25, 170 N.E.2d 635, the trial court permitted a plastic box with miniature boxes inside, representing a railroad car and stacked bales, to go to the jury room in a personal injury case involving an issue of negligence in the manner in which the bales were stacked. It was argued that this was error. On appeal, the court noted that both sides had made extensive use of the exhibit during the trial and that even though in some respects the model was not accurate, the deviations were minor and had been called to the attention of the jury by the parties. Therefore, it was held that there was no abuse of discretion under those circumstances. 28 Ill. App. 2d 117, 125, 170 N.E.2d 635.

 In this case, the circumstances are similar. Both sides made extensive use of this exhibit at trial. Both sides believed the exhibit was demonstrative of their theories as to whether the machine was too short. In light of the foregoing, we find that the trial court did not abuse its discretion in allowing the sketch to go into the jury room during deliberations.

## IV

Plaintiff argues that remarks by defendant's counsel during trial prejudiced plaintiff's right to a fair trial. This allegation is wholly unsupported.

 Plaintiff first takes offense to comments regarding plaintiff's inability to read or write. Testimony elicited from counsel on both sides, however, touched on this point due to plaintiff's argument regarding the ability of an illiterate to appreciate the warning sign. Plaintiff had suggested that defendant should have foreseen this type of employee when designing the warning signs. Under these circumstances, there can be no argument of prejudice here.

 Plaintiff also asserted that defendant's counsel made comments as to plaintiff working in a "sweat shop" and earning below minimum wage. However, as apparent in the record, plaintiff's counsel first used the term "sweat shop" and these comments as well as those regarding pay scale were stated in a side bar out of the presence of the jury. Plaintiff's assertion, therefore, is incorrect.

 Plaintiff further objects to a witness' comment that he had been with the Royal Canadian Air Force and had flown 31 missions in Europe. The trial court instructed the jury to disregard this statement. The court then asked plaintiff's counsel if he wanted a mistrial and counsel replied no. We find that this statement was unintended and was not of such character that would significantly influence the jury. See *Tague v. Molitor Motor Co.* (1985), 139 Ill. App. 3d 313, 487 N.E.2d 436.

In light of the foregoing, we find no prejudicial conduct by defendant sufficient to constitute reversible error.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.