THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EARNEST JOHNSON, Defendant-Appellant.

Fifth District No. 5—86—0365

Opinion filed August 11, 1988.—Rehearing denied September 23, 1988.

1000

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kenneth E. Boyle, Stephen E. Norris, and Kim G. Noffke, all of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, for the People.

JUSTICE WELCH delivered the opinion of the court:

The case now before us comes on appeal for the second time from convictions of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(3)) and armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2) entered against defendant Earnest Johnson after separate trials heard by a jury in the circuit court of Alexander County. Following the first trial, defendant was sentenced to a term of natural life imprisonment for murder and to a concurrent extended term of imprisonment of 50 years for armed robbery. On appeal, we reversed the defendant's convictions and remanded the case for a new trial. *People v. Johnson* (1985), 138 Ill. App. 3d 980, 486 N.E.2d 433.

Following the second trial before a jury, defendant was again found guilty of murder and armed robbery and on May 27, 1986, he was sentenced to life imprisonment for murder and 50 years' imprisonment for armed robbery. In the present appeal, defendant raises 11 issues for our consideration: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether he was denied his right to an impartial jury representing a fair cross-section of the community; (3) whether he was denied a fair trial by the trial court's refusal to allow the jury to hear certain testimony; (4) whether he was denied a fair trial where the trial court refused his attempt to reopen the evidence in surrebuttal; (5) whether he was denied a fair trial where the trial court refused to allow him to testify that his prior convictions were the result of guilty pleas; (6) whether he was denied a fair trial by the submission to the jury of details regarding his prior convictions; (7) whether he was denied a fair trial by arguments made by the State during closing argument; (8) whether he was denied a fair trial by the trial court's instruction to the jury that certain evidence was admissi-

ble only for impeachment purposes; (9) whether he was denied effective assistance of counsel at trial; (10) whether he was denied effective assistance of counsel at his post-trial motion hearing; and (11) whether he improperly received an extended-term sentence on his armed robbery conviction. The substantive facts are reported in our previous opinion (*People v. Johnson* (1985), 138 Ill. App. 3d 980, 486 N.E.2d 433), and any additions or changes will be made where pertinent to the following discussion.

■ The first issue presented by defendant is that the State did not prove him guilty beyond a reasonable doubt of armed robbery or murder. Defendant bases this argument on the assertion that the testimony of a key witness in the State's case was unbelievable. The witness whose testimony is questioned is James Johnson, a 15-year-old at the time of the underlying crime, and no relation to the defendant. James Johnson was the only witness claiming to have seen the defendant near the scene of the crime at the time of the killing. Defendant asserts that James Johnson's testimony was unbelievable because he did not make a statement implicating the defendant until three days after the crime, was seen socializing with the defendant a few hours after the crime, and in a statement given to the police stated that he heard a wrench drop when such specific information was unlikely to have been known by this witness if he were actually across the street playing basketball at the time of the killing, as claimed by this witness. Defendant cites *People v. Coulson* (1958), 13 Ill. 2d 290, 149 N.E.2d 96, and *People v. Lindsey* (1979), 73 Ill. App. 3d 436, 392 N.E.2d 278, for the proposition that where a witness' testimony is improbable or contrary to human nature, the reviewing court is not obliged to accept the truthfulness of that testimony.

■ ■ We do not find the testimony of James Johnson to be improbable or contrary to human nature such that its truthfulness may be disregarded completely. The fact that James Johnson made inconsistent statements, socialized with the defendant and was approximately one-half defendant's age are all factors to be considered by the jury. It is the function of the jury to weigh contradictory evidence and inferences, judge the credibility of the witnesses, receive expert instructions, and draw ultimate conclusions as to the facts. (*Tennant v. Peoria & Pekin Union Ry. Co.* (1944), 321 U.S. 29, 88 L. Ed. 520, 64 S. Ct. 409, *reh'g denied* (1944), 321 U.S. 802, 88 L. Ed. 1089, 64 S. Ct. 610.) A jury verdict should not be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony. (*Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 530, 504 N.E.2d 772, 776.) Only if the verdict was

palpably erroneous and wholly unwarranted, was clearly the result of passion or prejudice, or appears to be arbitrary, unreasonable, and not based upon the evidence will it be overturned. *Bautista*, 152 Ill. App. 3d at 530, 504 N.E.2d at 776.

■ The trial record in the present case contains evidence sufficient to support the finding of the jury. In addition to the testimony of James Johnson implicating the defendant, prior testimony of Walter Williams, deceased, was read into the record stating that during the afternoon of July 4, 1983, the day of the killing, the defendant entered Williams' home and presented for Williams' appraisal a "V" nickel minted either late in the 19th century or early in the 20th century. The victim's son testified that his father carried an old nickel in his wallet as a good luck coin. Defendant testified that he had found the nickel in his backyard. The victim's son also testified that his father had recently cashed a social security check and it was likely he had a substantial amount of cash in his possession on the day he was murdered. Additionally, the operator of a local pool hall testified that he had known the defendant since the defendant was a "small kid" and that approximately two to four hours after the killing, he observed the defendant gamble and lose approximately $30 shooting dice. The pool hall operator admitted that he allowed patrons to gamble in 1983, that he helped conduct the gambling activities, and when asked if he considered it unusual to see the defendant with that much money, he replied, "Well, I hadn't ever seen him with any. I had never seen him gamble before."

Moreover, an acquaintance of the defendant testified that he accompanied Sylvia Graham, a woman with whom the defendant lived, to the home occupied by her and the defendant around the time of the killing and that he observed Sylvia Graham unzip a cushion cover on a couch and remove a pair of trousers and a shirt. He saw what appeared to be blood on the shirt, and he later saw Sylvia Graham burning the trousers and shirt. Although unable to recall the date of this occurrence, he believed that it was after the defendant had been incarcerated. Finally, Phillip Justice testified that the defendant had approached him requesting money approximately two or three hours before the victim was killed.

The circumstantial evidence outlined above, along with other testimony contradicting defendant's alibi testimony, is sufficient to support the jury's finding, and, therefore, it will not be overturned.

■ Returning to the testimony of James Johnson, we will at this time address defendant's contention that he was denied a fair trial when the trial court incorrectly instructed the jury that evidence ad-

missible as substantive evidence was to be considered only for impeachment purposes (the eighth issue enumerated in the introductory paragraph above). The evidence defendant claims should have been admitted substantively is an inconsistent statement made by James Johnson. In a recorded statement given to the police, James Johnson stated in part that he had heard a wrench drop inside the victim's garage. At trial, James Johnson testified that after seeing the defendant enter the victim's garage he heard the sound of steel falling against either concrete or other steel. When asked if he had told the police that he had heard a wrench drop, he stated he did not remember. Defendant now contends that, according to statute (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1), such inconsistency in James Johnson's testimony was admissible as substantive evidence at trial. Therefore, according to defendant, the trial court's failure to so instruct the jury denied him a fair trial and necessitates a reversal and remand for a new trial. We do not agree.

Defendant cites *People v. Wilson* (1986), 149 Ill. App. 3d 1075, 501 N.E.2d 863, where the court stated that "[t]he value of using prior inconsistent statements derives from the fact that they contradict testimony given at trial. The clear benefit of being able to use a prior inconsistent statement as substantive evidence is that it places such testimony on equal footing with the trial testimony, thus making it more persuasive in the eyes of the trier of fact." (149 Ill. App. 3d at 1078-79, 501 N.E.2d at 865.) The case now before us is distinguishable from *Wilson* because in *Wilson* the failure to use a prior inconsistent statement as substantive evidence was critical to the defense of the charged crimes. The defendant in *Wilson* was convicted of attempted murder, armed violence based on attempted murder, and theft. (149 Ill. App. 3d at 1076, 501 N.E.2d at 863.) At trial, the only witness testifying as to the underlying incident stated that "when defendant was approximately 6 or 7 feet in front of her, *he looked back over his right shoulder and fired a shot* at her with a large silver gun which he held in his left hand." (Emphasis added.) (149 Ill. App. 3d at 1076, 501 N.E.2d at 864.) At a preliminary hearing just one day after the incident, the same witness had claimed that "defendant had been holding the gun in his right hand and had fired over his left shoulder, *without even looking back at her*." (Emphasis added.) (149 Ill. App. 3d at 1077, 501 N.E.2d at 864.) In *Wilson*, the failure to admit the prior inconsistent statement as substantive evidence not only deprived defendant of having an essential element of his defense emphasized to the jury, but was also directly responsible for the trial court's refusal to tender an instruction on the lesser offense of reck-

less conduct, which would have been appropriate under circumstances where defendant had acted recklessly in attempting to scare the victim and had not intended to kill her.

In the present case, defendant states no specific value in having James Johnson's prior inconsistent statement admitted as substantive evidence. Defendant goes so far as to state that the failure to instruct the jury as to the true substantive value of the inconsistent statements is highly prejudicial error, but offers no explanation as to how the error prejudiced the defendant. Even assuming, without deciding, that the jury was improperly instructed on the use of inconsistent statements, we are unable to find that any such error in this case prejudiced the defendant in any way. In the present case, any inconsistency between James Johnson's statement that he heard the sound of steel falling, made at trial, and his statement that he heard a wrench drop, made before trial, seems to be of little or no value beyond impeaching James Johnson's credibility, for which purpose the inconsistency was utilized. Therefore, we find that any error in failing to instruct the jury on the substantive value of the inconsistent statement is harmless, not of sufficient magnitude to require reversal.

■ The next issue presented for our review is whether the death penalty qualification of a jury where death was not a possible sentence denied defendant's right to due process under the fifth amendment and his right to an impartial jury under the sixth amendment. The situations in which death penalty qualification of a jury is appropriate are not specifically addressed in either the supreme court rule providing for *voir dire* examination of jurors (107 Ill. 2d R. 234), or the statutory provision for examination of jurors (Ill. Rev. Stat. 1985, ch. 78, par. 12). The most that we may logically and reasonably deduce from these provisions is that the examination of prospective jurors is a matter within the power and discretion of the trial court, and where the trial court allows counsel to pose questions to prospective jurors, such questioning shall be allowed only where proper. (See 107 Ill. 2d R. 234, Committee Comments, at 364.) This deduction is supported by Illinois case law dictating that the examination of prospective jurors by the trial court or by counsel is not a part of the right to trial by jury, but rather, a matter of trial detail which courts can regulate in the exercise of judicial discretion. *People v. Jackson* (1977), 69 Ill. 2d 252, 260, 371 N.E.2d 602, 606.

■ Prior to the second trial in the instant case, the State filed a notice of its intent to seek the death penalty on retrial. Accordingly, the trial court allowed the jury to be death penalty qualified. Because the double jeopardy clause prohibits the State from sentencing a

defendant to death after a previous life sentence had been set aside on appeal (*Arizona v. Rumsey* (1984), 467 U.S. 203, 81 L. Ed. 2d 164, 104 S. Ct. 2305), the death penalty qualification of the jury in the present case, where there existed no possibility of the defendant being sentenced to death, would appear to be error. However, such error did not prejudice the defendant (*People v. Erickson* (1987), 117 Ill. 2d 271, 513 N.E.2d 367) and does not affect the validity of his conviction (*People v. Freeman* (1987), 162 Ill. App. 3d 1080, 516 N.E.2d 440). It is well established that a jury questioned regarding the imposition of the death penalty is presumed to be a fair jury on the issue of guilt or innocence. *People v. Erickson* (1987), 117 Ill. 2d 271, 292, 513 N.E.2d 367, 376.

Defendant relies on *Bullington v. Missouri* (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852, and *United States v. Salamone* (3d Cir. 1986), 800 F.2d 1216, in support of his assertion that death qualification of the jury denied his right to a fair trial. In *Bullington*, the Supreme Court held that a sentence of life imprisonment in a State using a bifurcated sentencing procedure in capital cases acts as an implied acquittal of the death sentence. (451 U.S. at 445, 68 L. Ed. 2d at 283, 101 S. Ct. at 1861.) The *Bullington* court reasoned that because the trial procedure in Missouri provided for a separate sentencing hearing at which the State had the burden of proof, in cases where a jury is unable to decide unanimously to impose the death penalty, the jury thereby impliedly acquits the defendant of whatever was necessary to impose the death sentence. 451 U.S. at 445, 68 L. Ed. 2d at 283, 101 S. Ct. at 1861.

The Illinois provision for death penalty sentencing (Ill. Rev. Stat. 1985, ch. 38, par. 9—1), although not identical to that in Missouri, does provide for a separate sentencing hearing at which the State has the burden of establishing beyond a reasonable doubt the existence of aggravating factors making appropriate the imposition of the death sentence. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(d), (f).) The bifurcated trial and sentencing procedure used in the present case brings this case under the ruling of *Bullington* and the defendant could not again be confronted with a possible death sentence; however, the ruling of *Bullington* notwithstanding, the death penalty qualification of the jury at defendant's second trial did not affect the validity of his conviction. *People v. Freeman* (1987), 162 Ill. App. 3d 1080, 1089, 516 N.E.2d 440, 445.

In *Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758, the Supreme Court explained that any group defined solely in terms of shared attitudes that render members of the

group unable to serve as jurors in a particular case may be excluded from jury service without contravening any of the basic objectives of the fair–cross-section requirement, and held in particular that death qualification does not violate the fair–cross-section requirement. (476 U.S. at 176-77, 90 L. Ed. 2d at 150, 106 S. Ct. at 1766.) Further, citing *Smith v. Phillips* (1982), 455 U.S. 209, 71 L. Ed. 2d 78, 102 S. Ct. 940, for the proposition that due process means a jury capable and willing to decide the case solely on the evidence before it, the *Lockhart* Court rejected the argument that death qualifying a jury denied the defendant his right to an impartial jury. (476 U.S. at 178, 90 L. Ed. 2d at 150, 106 S. Ct. at 1767.) Therefore, because the jury in the present case was death penalty qualified pursuant to *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, *reh'g denied* (1968), 393 U.S. 898, 21 L. Ed. 2d 186, 89 S. Ct. 67, and because the judge properly instructed the jury prior to sentencing that defendant was not eligible for the death sentence, we find that any error in allowing the jury to be death penalty qualified was harmless error.

■ Defendant's reliance upon *Salamone* is also misplaced. In *Salamone*, jurors were excused for cause simply because of their affiliation with the National Rifle Association (NRA). The affiliation with the NRA in itself is not enough to sustain an exclusion for cause. It must also be shown that a prospective juror's affiliation with the NRA would prevent him from conscientiously applying the law applicable to the case. Similarly, in death penalty qualifying a jury, it is not enough to show that a prospective juror is opposed to the death penalty. In order to exclude a prospective juror pursuant to *Witherspoon*, it must be shown that the juror cannot or will not conscientiously obey the law with respect to the application of the death penalty. The *voir dire* transcript in the present case indicates that the jury was death penalty qualified in accordance with *Witherspoon* and we therefore find the ruling in *Salamone* inapplicable.

Next, defendant contends that he was denied a fair trial by the trial court's refusal to allow him to introduce evidence in an attempt to impeach the testimony of James Johnson, Phillip Justice and Scott Watson. With respect to James Johnson and Phillip Justice, defendant argues that the trial court erred when it granted the State's motion *in limine* to prohibit the defendant from testifying as to the alleged relationships and conversations defendant had with James Johnson and Phillip Justice.

■ Regarding Phillip Justice, defendant intended to testify that Phillip Justice had requested sexual favors from the defendant and

had been refused. By introducing this testimony into evidence, defendant argues that he could have shown that Phillip Justice's testimony that the defendant had requested money from him prior to the killing was prompted by bias or prejudice against the defendant. In support of this argument, defendant relies on the following passage from *People v. O'Dell* (1980), 84 Ill. App. 3d 359, 405 N.E.2d 809:

"The scope of cross-examination to show bias is very liberal. It is proper to inquire of a witness, in order to show his bias or prejudice, as to his relations with the defendant and his interest in the result of the suit. [Citation.] The latitude of cross-examination in this regard is controlled by the sound discretion of the trial court [citation], and a court of review will interfere only in the case of a clear abuse of discretion resulting in manifest prejudice to defendant. [Citation.] As a general rule, it is proper on cross-examination of a defense witness to question all matters that explain, qualify, discredit or destroy his direct testimony, although they may incidentally constitute new matter which aids the cross-examiner's case. [Citations.] The bias of a witness, whether favorable to or adverse to the defendant, is always pertinent on the question of the credibility of the witness." 84 Ill. App. 3d at 371-72, 405 N.E.2d at 819-20.

On appeal, defendant asserts that the State's motion *in limine* precluded the introduction of his testimony to the effect that Phillip Justice's testimony was motivated by his interest in mounting a counterattack against the defendant in retaliation for defendant having rejected Justice's homosexual advances. Granted that cross-examination to show bias, interest, or motive to testify falsely is a matter of right (*People v. Triplett* (1985), 108 Ill. 2d 463, 475, 485 N.E.2d 9, 15), the evidence used must give rise to the inference that the witness has something to gain or lose by his testimony, and, therefore, the evidence used must not be remote or uncertain (*Triplett*, 108 Ill. 2d at 475-76, 485 N.E.2d at 15).

In *Triplett*, the court ruled that a witness' contacts with the police prior to the date of the defendant's alleged crimes were too remote, uncertain and speculative to be admissible to impeach the witness at defendant's trial. Such contacts with the police prior to the date of the crimes witnessed by this witness were held not to give rise to an inference that the witness had something to gain or lose by testifying. (108 Ill. 2d at 477, 486 N.E.2d at 16.) On the other hand, in the same opinion, the *Triplett* court held that the fact that the witness was in custody at the time he testified was sufficient to give rise to an inference that the witness had something to gain or lose by tes-

tifying. (108 Ill. 2d at 481, 485 N.E.2d at 18.) The *Triplett* court distinguished between prior police contacts and actual police custody at the time of testifying and ruled that prior police contacts were too remote or uncertain to give rise to the inference that the witness had something to gain or lose by his testimony, while actual police custody at the time of testifying was not so remote or uncertain. (108 Ill. 2d at 475, 485 N.E.2d at 15.) Applying the distinction enunciated in *Triplett*, we find that defendant's testimony that Phillip Justice made homosexual advances and had been rejected is too remote and uncertain to give rise to the inference that Phillip Justice had something to gain or lose by his testimony. Therefore, the ruling of the trial court will stand.

 Turning our focus to the testimony of James Johnson, defendant claims that the trial court erred in prohibiting the defendant from testifying to the relationship between him and James Johnson in an attempt to show that they had spent time together on the day of the killing and that James Johnson was not afraid of the defendant. Defendant intended to testify that James Johnson had followed the defendant around during a considerable part of July 4, 1983, the day of the killing, and had repeatedly requested that defendant procure some marijuana and alcohol on his behalf. According to defendant, such testimony would contradict James Johnson's testimony that he had not been with defendant for any length of time on July 4, 1983, and would have impeached James Johnson by showing his claim that he was afraid of the defendant was false. In *People v. Griffith* (1986), 143 Ill. App. 3d 683, 493 N.E.2d 413, this court ruled that impeachment does not render a witness' testimony nugatory, but, rather, goes to the credibility and weight of the testimony. (143 Ill. App. 3d at 684, 493 N.E.2d at 415.) In the instant case, James Johnson had already admitted that he did not offer a statement to the police at the scene of the crime, and in fact had waited until three days after the crime, at which time he made a statement only after being compelled to do so by a police officer.

Further, we do not agree with defendant's argument that testifying about James Johnson's having spent time with the defendant on the day of the crime, following the defendant around requesting marijuana and alcohol, leads only to the conclusion that James Johnson was not afraid of the defendant. It is also highly likely that, although James Johnson may not have been afraid of the defendant under ordinary circumstances, he would have reason to fear any future encounter with the defendant if he were to implicate the defendant in the underlying crime. Because the jury was already aware of James John-

son's failure to make a statement at the first opportunity, and because matters of impeachment are within the discretion of the trial court (*Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 458 N.E.2d 1331), we are unable to find that the trial court erred in denying defendant the opportunity to present this quandary to the jury.

■■■ The final assertion presented by defendant under this issue is that the trial court erred in sustaining the State's objection to a question asked of Officer Scott Watson on cross-examination. At the defendant's first trial, Watson testified that he had initially asked James Johnson if he had seen anyone around the shop before he found the victim, and James Johnson responded that he had not seen anyone and knew nothing about the incident until he found the victim. At the second trial, defense counsel asked Officer Watson if James Johnson had told him that he saw the defendant go into the victim's shop, and the State objected to this question as it called for hearsay. The court sustained the objection and the defense abandoned that line of questioning. We find no error in the trial court's ruling, first, because the question did call for a hearsay response, and second, the potential for impeachment based on the information sought is questionable. The jury was already aware that James Johnson was a 15-year-old boy who had implicated someone approximately twice his age for murder. The transcript of James Johnson's testimony reflects that "I don't recall" and "I can't remember" were common responses heard by the jury, and the jury was already aware that James Johnson did not implicate the defendant until three days after the crime. Therefore, we find that the trial court's sustentation of the State's hearsay objection was proper, and, even were the defense to have solicited this allegedly impeaching evidence using appropriate questioning, the value of this cumulatively impeaching evidence would have been slight at best.

■■■ The next issue presented for our review is whether the trial court abused its discretion in denying defendant's request to recall James Johnson to the stand so that he could be questioned a second time regarding his testimony at the defendant's first trial. After the State had completed its presentation of rebuttal evidence, but before closing arguments, defense counsel requested permission to recall James Johnson to the stand either as a witness in surrebuttal or on the defendant's motion to reopen the defense evidence. In particular, defendant wished to confront James Johnson with his testimony from the first trial wherein he admitted that the police had suggested the defendant as a possible perpetrator of the crime. The trial court denied the motion, ruling that James Johnson had testified that he had

not mentioned the defendant's name because he was scared and that the defense had had ample opportunity to cross-examine James Johnson on this point previously. The defendant emphasizes the importance of allowing him to reopen the case to further question James Johnson because of the crucial nature of Johnson's testimony. We agree that Johnson's testimony was crucial to the State's case, but we are unable to find that the testimony sought had potential sufficient to warrant a reopening of the case. The defense had already solicited several potentially impeaching responses regarding James Johnson and had therefore not entirely overlooked the possibility of impeaching his testimony. If the defense truly believed the evidence sought to be solicited on reopening of the case was of substantial impact, it is unlikely that the defense would have overlooked that particular line of questioning during cross-examination of James Johnson. A court has discretion in determining whether to reopen a case (*People v. Cross* (1968), 40 Ill. 2d 85, 237 N.E.2d 437), and we are unable to find the trial court abused that discretion in the case before us.

Next, defendant argues that he was denied a fair trial by the trial court's refusal to allow the jury to consider that defendant's prior convictions were the result of guilty pleas. Although Illinois courts have ruled that an accused should be permitted to show that he entered a plea of guilty to a prior offense and that when he was in fact guilty he admitted it (*People v. Taylor* (1979), 68 Ill. App. 3d 680, 386 N.E.2d 159; *People v. Ridley* (1975), 25 Ill. App. 3d 596, 323 N.E.2d 577), we agree with the holding of *People v. Reppa* (1982), 104 Ill. App. 3d 1123, 433 N.E.2d 1091, that such testimony from the defendant could not have so bolstered his credibility so as to have affected the outcome of the trial (104 Ill. App. 3d at 1128, 433 N.E.2d 1096). Given the popularity of plea bargaining, as well as other possible reasons for a defendant's guilty plea, evidence of a guilty plea entered in a previous case is not highly probative of a defendant's guilt or innocence in a subsequent case. Therefore, any error in not allowing this evidence at trial would not have prejudiced the defendant so as to have affected the outcome of the trial.

The next issue to be considered also relates to defendant's prior convictions. He claims that the introduction of details relating to his prior convictions denied him a fair trial. Defendant cites *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, for the proposition that evidence of a prior conviction offered for impeachment should not include the nature of the prior offense or the length of the sentence received. *Montgomery* also places within the discretion of the trial judge the determination of whether the probative value of

the evidence of the prior crime is substantially outweighed by the danger of unfair prejudice to the defendant. In the present case, it does not appear that the details appearing on the documents necessary to authenticate defendant's prior convictions (see *People v. Lindsey* (1986), 148 Ill. App. 3d 751, 499 N.E.2d 715) were unfairly prejudicial such that their admission might constitute an abuse of the trial court's discretion.

■■ Defendant's next issue on appeal is that he was denied a fair trial because the State argued beyond the evidence during closing arguments. The specific instances in which the defendant contends that the State argued beyond the evidence are when the State argued: (1) that the police told James Johnson that the murder weapon was a wrench; (2) that the defendant attempted to persuade James Johnson to testify differently; and (3) that Sylvia Graham, a witness called on behalf of defendant, was on probation. As for the first two instances of allegedly improper closing argument, we find that both of these arguments are either based on facts in evidence or upon reasonable inferences drawn from facts in evidence. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267, *reh'g denied* (1985), 474 U.S. 1027, 88 L. Ed. 2d 567, 106 S. Ct. 585.) The State's argument that the police told James Johnson that the murder weapon was a wrench may be reasonably inferred from the facts at trial indicating that James Johnson was present at the crime scene during part of the investigation in which the wrench having blood on it was discovered. Because James Johnson was present at the crime scene, it is reasonable to infer that he was either directly or indirectly informed that a wrench was the suspected murder weapon.

Similarly, it is reasonable to infer from the facts at trial that the defendant may have tried to sway the testimony of James Johnson. The record indicates that James Johnson was across the street playing basketball at the time the defendant murdered the victim, that James Johnson saw the defendant enter and exit the victim's shop, and that the defendant was later seen with James Johnson. From these facts it is reasonable to infer that the defendant may have been aware that James Johnson had seen him enter and exit the victim's shop, and that the defendant may have considered it a wise precautionary measure to talk with James Johnson about what he saw, and about which he might later be called upon to testify. In both of these instances, the State's argument was within the wide latitude afforded the prosecution during closing argument (*People v. Morrison* (1985), 137 Ill. App. 3d 171, 184, 484 N.E.2d 329, 339), and the trial court

therefore did not abuse its discretion in allowing these inferences to be admitted as part of the State's closing argument. Moreover, even were we to find that these arguments were beyond the evidence, the jury was instructed to disregard any arguments not based on the evidence, and such an instruction has been held to cure any prejudice resulting from any improprieties during closing arguments. *People v. Trimble* (1985), 131 Ill. App. 3d 474, 478, 475 N.E.2d 971, 975.

 Regarding the State's reference during closing argument to the fact that Sylvia Graham was on probation, we do not find this error prejudicial to defendant. The fact that Sylvia Graham was a convicted felon was presented to the jury during the trial, but the fact that she was on probation at the time she testified was not. Defendant offers no explanation as to how he was prejudiced by the introduction of Sylvia Graham's probation during closing argument. While it could be argued that the introduction of a witness' probation prejudices the defendant because it suggests to the jury the possibility that the witness complied with the subpoena requiring them to testify only to avoid violating the terms of their probation, it could also be argued that the introduction of a witness' probation might suggest to the jury that the witness has been convicted of a felony and has been fortunate enough to receive a sentence of probation, which the witness does not want to jeopardize by testifying falsely. Neither of these possible jury interpretations would affect the credibility of the witness to any considerable extent, especially where the jury is already aware that the witness is a convicted felon, and, therefore, we find any error in this segment of the State's closing argument to be harmless.

 Defendant next contends that he was denied effective assistance of counsel at trial. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, outlined a two-tiered test to be used when making a determination as to whether a defendant received ineffective assistance of counsel. The defendant must show that his counsel's performance fell below an objective standard of reasonableness. A counsel's performance will not be found to constitute ineffective assistance under the Constitution unless it is shown to be prejudicial to the defendant. (*People v. Enoch* (1988), 122 Ill. 2d 176, 200, 522 N.E.2d 1124, 1137.) If a reviewing court is able to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

 Defendant argues that his counsel's assistance was ineffective because she was unaware of the Supreme Court holding in *Bullington v. Missouri* (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct.

1852, and did not prevent the death penalty qualification of the jury that convicted the defendant. Because we have already ruled in this opinion that the death penalty qualification of the jury that convicted the defendant did not violate the defendant's right to an impartial jury drawn from a fair cross-section of the community (see discussion of second issue above), we likewise find that the performance of defendant's counsel in allowing the jury to be death penalty qualified did not prejudice defendant and therefore was not ineffective in this respect. Defendant raises other instances of alleged ineffectiveness which we find unnecessary to discuss as we do not find that the defendant was prejudiced by the alleged instances of ineffectiveness, and, relying on *Strickland*, we find it unnecessary to discuss counsel's performance in instances where the alleged ineffectiveness was not prejudicial to defendant and did not undermine the fundamental fairness of the proceeding. *Strickland*, 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

In a similar issue presented separately, defendant argues that he was denied effective assistance of counsel at his post-trial hearing because the trial court denied a motion to withdraw presented by the same counsel who defendant alleges assisted him ineffectively at trial. As a result, defendant's post-trial motion was presented by the same counsel alleged to have assisted him ineffectively at trial. Defendant relies on *People v. Simpson* (1984), 129 Ill. App. 3d 822, 473 N.E.2d 350 wherein the reviewing court remanded the cause for a new post-trial hearing because the trial court had refused to grant the defendant substitute counsel to argue a post-trial motion for a new trial based upon the ineffective assistance of counsel at defendant's trial. (129 Ill. App. 3d at 841, 473 N.E.2d at 354.) The present case is somewhat different because the defendant did not request that the trial court appoint a new counsel to represent him, and, accordingly, the court could not refuse defendant's request for a new counsel at the post-trial hearing. The record in the present case indicates that the defendant was primarily interested in preserving the ineffective assistance of counsel issue for review, and the trial court stated that the issue had been adequately raised in the post-trial hearing. Arguably, the trial court should have appointed new counsel on its own motion; however, it is our opinion that the issue of ineffective assistance of counsel has been adequately presented on review, and we find it unnecessary to remand this cause for an additional post-trial hearing at which the defendant could be represented by new counsel.

The final issue presented for our consideration on review is that the defendant improperly received an extended-term sentence on

his armed robbery conviction when armed robbery was not the most serious offense for which defendant was convicted. In *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569, our supreme court held that a defendant may receive an extended-term sentence only for the most serious offense of which he has been convicted. Because the defendant in the present case was convicted of murder, he cannot receive an extended-term sentence for the lesser offense of armed robbery. Accordingly, the trial court's judgment imposing an extended-term sentence for armed robbery is reversed, and this cause is remanded so that the trial court may impose a sentence not inconsistent with this ruling.

For the foregoing reasons, the judgment of the circuit court of Alexander County is affirmed in part and reversed in part, and remanded with instructions for further proceedings.

Affirmed in part; reversed in part and remanded for further proceedings.

KARNS and LEWIS, JJ., concur.