SAVAGE MANUFACTURING AND SALES, INC., Defendant-Appellant and Third–Party Plaintiff-Appellant, v. PAUL DOSER, Plaintiff-Appellee (Chrysler Motors Corporation, Third–Party Defendant-Appellee).

First District (4th Division)   No. 1—87—1720

Opinion filed May 18, 1989.—Rehearing denied June 29, 1989.

JIGANTI, P.J., dissenting.

Burr E. Anderson, of Speckman & Anderson, of Chicago, for appellant.

Bernard R. Nevoral, of Bernard R. Nevoral & Associates, Ltd., of Chicago, for appellee Paul Doser.

Pappas, Power & Marcus, of Chicago (Debra K. Marcus and William R. Power, of counsel), for appellee Chrysler Motors Corporation.

JUSTICE McMORROW delivered the opinion of the court:

Defendant Savage Manufacturing and Sales, Inc. (Savage), appeals from a judgment entered upon a jury verdict that found Savage strictly liable in tort for injuries to plaintiff Paul Doser (Doser) proximately caused by Savage's failure to provide safety guards or adequate warnings on a hydraulic machine press. Doser's left-hand finger was amputated by the press while Doser was aiding a fellow Chrysler employee assigned to operate the press. Savage also appeals from trial court orders that severed Savage's third-party contribution claim against Doser's employer, Chrysler Motors Corporation (Chrysler), and thereafter dismissed the third-party claim because of a settlement reached between Doser and Chrysler.

We reverse.

Evidence at trial established the following facts surrounding Doser's injury and Chrysler's purchase of the hydraulic press. Doser was injured on August 8, 1979, when the ram of a hydraulic press was activated and amputated a finger on his left hand. No mechanical failure or malfunction of the press caused or precipitated the injury. At the time of the accident, Doser was an employee at Chrysler's Belvidere automobile plant. Doser was experienced at operating the press which caused the injury. He admitted at trial that he knew the press was to be operated by only one person at a time.

On the date of the injury, Doser had completed his assigned tasks at his hydraulic press and volunteered to assist a fellow employee, Willie Wilcox (Wilcox), in using Wilcox' machine to press bushings onto the "knuckle" of automobile steering systems, which was normally a front-feed operation. To help Wilcox in performing this work, Doser side fed certain parts into the press. Wilcox then front fed other parts into the press and, using both hands, pressed two palm buttons located on the front of the machine. Once Wilcox activated the machine by simultaneously pressing both buttons, the ram of the press descended upon the parts and forced them together into place. Doser's left-hand finger was severed when Wilcox prematurely activated the dual palm buttons, causing the ram to descend on Doser's hand.

Chrysler purchased the press from Savage in 1973 following Chrysler's provision of specifications to and receipt of quotations from a manufacturing machine broker. Chrysler indicated to Savage that the press was to be manufactured without a "point of operation," *i.e.*, without dies or other toolings. The press purchased by Chrysler complied with the requirement that it have no point of operation, and Chrysler installed dies on the press when received from Savage. The press was designed, manufactured and sold with the following safety features: dual palm buttons, which required that both hands of the operator be used simultaneously to activate the machine; an anti–tie-down feature, which prevented one of the palm buttons from being tied down into a permanently activated position; guards around the palm buttons, extending the same distance from the machine as the buttons, which prevented activation of the palm buttons by accidental contact; and an anti-repeat feature, which prevented the press from automatically repeating the downward stroke of the ram. The press also carried a warning on the front which stated, "Never place your hands in the die area." A manual which was sent to Chrysler with the press included safety instructions that warned against operation of the press by two persons at the same time.

Doser's expert witness testified that, in his opinion, the Savage press Chrysler purchased was dedicated to a single use and was therefore unifunctional. The expert further testified that in his opinion the press was unreasonably dangerous because it was not equipped with safety guards around the point of operation of the machine. The expert explained that safety guards could have been either fixed barrier guards, interlocking barrier guards, adjustable barrier guards, or presence-sensing devices such as light curtains, radio frequencies, or infrared light curtains. Doser's expert also stated that the press should have clearly and specifically carried a warning against two-persons operation of the press.

The expert witness who testified on behalf of Chrysler disagreed with Doser's expert on each of these points. Savage's expert testified that in his opinion the hydraulic press was a multifunctional machine; because its use was multifunctional, it was his opinion that Savage could not have reasonably equipped the press with safety guards around the machine rams when the press was manufactured and sold to Chrysler. Savage's expert also gave his opinion that the warnings were adequate.

The jury returned a verdict in favor of Doser and against Savage, and awarded Doser a total of $205,000 in damages. The jury also found that the fault attributable to Doser warranted reduction of the

award by 20% (amounting to $41,000), causing a net verdict in favor of Doser in the amount of $164,000. The court entered judgment in accordance with the jury's verdict and denied Savage's post-trial motion. Savage appeals.

Savage argues that the jury's verdict must be reversed because the evidence showed that the hydraulic press was equipped with adequate safety features and sufficient warnings. With regard to whether the press should have been made with safety guard surrounding the point of operation, Savage maintains that plaintiff's evidence established that no guards were required. Savage's argument is premised on the testimony of plaintiff's expert that if the press was multifunctional, it could not be equipped by Savage with any particular kind of point of operation safety guard. Savage asserts that the documents submitted to it by Chrysler's broker, and the multiple uses to which Chrysler put the press after it was purchased by Chrysler, demonstrated that the press was multifunctional. Based on these arguments, Savage maintains that the press it sold to Chrysler was not unreasonably dangerous. We agree.

The record shows that the plaintiff's expert witness testified that in his opinion, Savage should have ascertained whether Chrysler intended to use the press for a single purpose or for multiple purposes. Plaintiff's expert further testified that such an inquiry by Savage would have revealed that Chrysler intended to use the press for a single purpose. Based on this conclusion that Chrysler intended the press to be unifunctional as opposed to multifunctional, plaintiff's expert testified that the press, as a unifunctional machine, could have been readily equipped with various types of safety guards at the point of operation.

However, a manufacturer has no duty to inquire whether a machine is intended for single or multiple use by a purchaser. "Needless to say, this would require the manufacturer to confer with every prospective buyer and make a judgment, at his peril, of what the buyer needed. Alternatively, the manufacturer would be under a duty to recommend to or provide the buyer *all* of the accessories [or safety guards] available regardless of how limited was the intended use. No case has been cited, or do we think one exists, extending the doctrine of strict liability to this extreme." (Emphasis in original.) (*Weiss v. Rockwell Manufacturing Co.* (1973), 9 Ill. App. 3d 906, 912, 293 N.E.2d 375.) The opinion of the plaintiff's expert that the hydraulic press was unifunctional was premised on the assumption that Savage had a duty to inquire whether Chrysler intended the hydraulic press for unifunctional or multifunctional use. Contrary to the opinion of

plaintiff's expert, Savage had no duty to so inquire of Chrysler in the case at bar.

■ Plaintiff produced no evidence at trial to show that Savage had been informed by Chrysler of the particular use to which Chrysler originally intended to put the hydraulic press. Defendant's expert testified that if Chrysler did not inform Savage of the particular use to which Chrysler intended to put the press, the documents received by Savage indicated that Chrysler intended the hydraulic press to be multifunctional. Thus defendant's expert stated that, in his opinion, Savage provided Chrysler a multifunctional hydraulic press. Plaintiff's expert presented no testimony disputing the conclusion of defendant's expert to the effect that the documentation received by Savage indicated an order for a multifunctional hydraulic press. Plaintiff's expert agreed at trial that it would be virtually impossible to provide safety guards at the point of operation of Savage's hydraulic press if the press were intended for multifunctional use. Plaintiff's expert also admitted at trial that Savage's failure to provide safety guards at the point of operation was not unreasonably dangerous if the press were multifunctional rather than unifunctional. This evidence proved, without contradiction, that Savage's press was not unreasonably dangerous for lack of safety guards at the point of operation. See generally *Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 504 N.E.2d 772; *Rios v. Niagara Machine & Tool Works* (1973), 12 Ill. App. 3d 739, 299 N.E.2d 86, *aff'd* (1974), 59 Ill. 2d 79, 319 N.E.2d 232; *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74; *Soto v. E.W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572.

■ On appeal, plaintiff maintains that the multifunctional nature of Savage's press does not dispose of the question of whether the press was unreasonably dangerous. In this regard, plaintiff relies upon *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232. In *Rios*, the Illinois Supreme Court commented, "Although the multifunctional nature of a product would be a factor to consider in determining whether a product is unreasonably dangerous, it would not necessarily be decisive of that question." 59 Ill. 2d at 86-87.

We do not believe this statement by the Illinois Supreme Court in *Rios* should be interpreted to relieve the plaintiff in this case of his burden to produce evidence that Savage's press, as a multifunctional product, was unreasonably dangerous. The record shows that plaintiff produced no evidence to establish how Savage's press, as a multifunctional machine, could have reasonably been fitted with safety guards

at the point of operation. Plaintiff's expert witness testified that Savage's press was *not* unreasonably dangerous, as a multifunctional press, for failure to provide safety guards at the point of operation. Thus the record shows that plaintiff produced no evidence to establish that Savage's press, as a multifunctional machine, was unreasonably dangerous for lack of point of operation safety guards. Accordingly, we find plaintiff's reliance upon the legal principle recognized in *Rios* insufficient ground to affirm the trial court's judgment.

■ Savage also argues that the hydraulic press was not unreasonably dangerous because of inadequate warnings. We agree. The danger of injury from two-person operation of the press, wherein one worker would place his hands in the die area without having to remove his hands in order to operate the press, was open and obvious, and Doser so conceded when he admitted at trial that he knew the press was not to be used simultaneously by two workers. Furthermore, Savage placed a warning on the front of the machine advising "[n]ever place your hands in the die area," and provided an additional warning in an operating manual that accompanied the press against two-person operation of the machine. Given these considerations, we conclude that the hydraulic press was not unreasonably dangerous because of inadequate warnings. See, *e.g., Anderson v. Dreis & Krump Manufacturing Co.* (Wash. App. 1987), 739 P.2d 1177; see generally *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465.

In light of these conclusions, we must reverse the judgment entered in favor of Doser at trial. Other arguments raised upon review need not be addressed.

Reversed.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

The majority holds that Savage's press was multifunctional and therefore not unreasonably dangerous for lack of safety guards at the point of operation. With this holding, the majority opinion stands for the proposition of law that a press without safety guards at the point of operation is not unreasonably dangerous if it is multifunctional. However, this is not the law. In Illinois, the manufacturer is under a nondelegable duty to produce a product which is reasonably safe and such duty is not obviated because a product is multifunctional. (*Medina v. Air-Mite Devices, Inc.* (1987), 161 Ill. App. 3d 502, 508, 515 N.E.2d 770, 774; *Scott v. Dreis & Krump Manufacturing Co.* (1975),

26 Ill. App. 3d 971, 986, 326 N.E.2d 74, 84.) Although the multifunctional nature of a product may be a factor to consider in determining whether a product is unreasonably dangerous, it is not, as the majority opinion indicates, determinative of that issue. *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 86-87, 319 N.E.2d 232, 236.

In the instant case, the plaintiff's expert testified that based on the documents he reviewed as well as his experience in selling presses, Savage knew that the press would be used to press bushings. Savage also knew the press required several ram dimensions in order to fit the existing tooling which Chrysler intended to attach to the ram. The expert concluded that based on this information, Savage could have guarded the point of operation with one of four types of guards used throughout the press industry. According to the expert, these guards were suitable for the subject press and would have protected the operator as well as others in the area of the press from coming in contact with the point of operation. In his opinion, the press was unreasonably dangerous without one of these guards. The expert acknowledged that at the time of the incident the press was being used for a different purpose. However, the expert testified that the modification of a press to perform a different function did not change his opinion that the press was unreasonably dangerous for failure to properly guard the point of operation.

Although the defendant's expert disagreed with the plaintiff's expert's testimony, a jury verdict should not be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony. (*Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 530, 504 N.E.2d 772, 776.) Viewing the evidence in the light most favorable to the plaintiff, I cannot say that the jury verdict is against the manifest weight of the evidence. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236.) Therefore, I would affirm the decision of the trial court.